# **EXHIBIT B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

QUEENS 8105 LENDER LLC,

        *Plaintiff,*

    -against-

DONGAN PLAZA INC., TU KANG YANG. NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, NEW YORK STATE DEPARTMENT OF TAXA TION AND FINANCE, NEW YORK CITY DEPARTMENT OF FINANCE, CAPITAL ONE DEVELOPMENT LLC, LUCKY CHAU REALTY INC., 81-05 QUEENS INC., ACER CONSTRUCTION INC., MOHAMMAD TAGHI NOORI, BOARD OF MANAGERS OF THE DONGAN TOWER CONDOMINIUM, ARYA CAFE a/k/a ARYA'S CAFE,

        *Defendants.*

Index No. 720909/2021

**REFEREE'S OATH**

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss: |
| COUNTY OF QUEENS | ) |

    I, Lisa Singer, the Referee, appointed by an Order of this Court, made and entered in the above-entitled action, and bearing date the 13th day of October, 2022, to ascertain and compute the amount due to the plaintiff for principal, interest and other charges due upon the note and mortgage upon which this action was brought, and to examine and report whether the mortgaged premises can be sold in parcels, do solemnly swear that I will faithfully and fairly determine the questions so referred to me, and make a just and true report thereon according to the best of my understanding and as the said Order requires.

                        Lisa Singer, Esq.

Sworn to before me this
9th day of December, 2022

Notary Public

Lori R. Somekh
Notary Public state of New York
Registration No. 02SO5049217
Qualified in Nassau County
Commission Expires Nov. 13, 2025

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

---

QUEENS 8105 LENDER LLC,

                    *Plaintiff,*

          -against-

DONGAN PLAZA INC., TU KANG YANG. NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK STATE DEPARTMENT OF
TAXA TION AND FINANCE, NEW YORK CITY
DEPARTMENT OF FINANCE, CAPITAL ONE
DEVELOPMENT LLC, LUCKY CHAU REALTY
INC., 81-05 QUEENS INC., ACER CONSTRUCTION
INC., MOHAMMAD TAGHI NOORI, BOARD OF
MANAGERS OF THE DONGAN TOWER
CONDOMINIUM, ARYA CAFE a/k/a ARYA'S CAFE,

                    *Defendants.*

Index No. 720909/2021

**REPORT OF AMOUNT DUE**

---

TO THE SUPREME COURT OF NEW YORK: COUNTY OF QUEENS:

In pursuance of an Order of this Court, entered in the above-entitled action and entered October 13, 2022, whereby it was referred to the undersigned as Referee to ascertain and compute the amount due to the plaintiff by virtue of the note and mortgage upon which this action was brought, and also to examine and report whether the mortgaged premises can be sold in parcels.

I, Lisa Singer, Esq., the Referee in the said Order named,

DO REPORT that before the proceeding to hear the testimony I was first duly sworn faithfully and fairly to determine the questions referred to me, and to make a just and true report thereon, according to the best of my understanding; that on the 5th day of December, 2022, Kamran Yaghoubzadeh, manager of the Plaintiff Queens 8105 Lender LLC, submitted testimony in the form of an affidavit submitted herewith, sworn to on November 14, 2022; that I have computed and ascertained the amount due to the plaintiff upon and by virtue of the said notes and mortgages and that I find, and accordingly report, that there is due to the plaintiff for principal and interest on the said notes and mortgages, at the date of this my Report, an aggregate sum of ~~seventeen million four hundred five thousand one hundred forty-four dollars and 90/100 ($17,405,144.90)~~ plus interest from this date as provided in the complaint, exclusive of counsel fees, calculated as follows:

*\* seventeen million three hundred eighty thousand one hundred forty-four dollars and 90/100 ($17,380,144.90)*

1

### First Mortgage

- $8,500,000.00 in unpaid principal balance.

- $5,162,336.37 in default interest calculated from May 17, 2020, to November 14, 2022, at the rate of 24.00% per annum.

- $ 0.00
- ~~$19,318.18 in~~ lender administration fees and protective advances. *(waived per plaintiff)*

- ($248,861.12) as credit for payments made by Borrower.

### Second Mortgage

- $2,500,000.00 in unpaid principal balance.

- $1,518,336.37 in default interest calculated from May 17, 2020, to November 14, 2022, at the rate of 24.00% per annum.

- $ 0.00
- ~~$5,681.82~~ in lender administration fees and protective advances. *(waived per plaintiff)*

- ($51,666.66) as credit for payments made by Borrower.

Schedule A, hereunto annexed, contains a schedule of the documentary evidence introduced before me, and shows the amount due for principal, interest, and escrow/impound advance balance, respectfully.

I have made inquiry as to the advisability of selling the mortgaged premises in parcels and find accordingly that the mortgaged premises should be sold in one parcel.

Dated: __12/9/2022__, 2022

_____

Referee, Lisa Singer, Esq.

Case 1-22-42552-nhl    Doc 62-2    Filed 08/15/23    Entered 08/15/23 13:05:23

## SCHEDULE A:
## ABSTRACT OF DOCUMENTARY EVIDENCE

**Marked Exhibit A.**

One Promissory Note bearing date of May 17, 2018, made and executed by Dongan Plaza Inc., in the sum of Eight Million Five Hundred Thousand Dollars ($8,500,000.00) payable to MIOF Credit 1 LLC, together with an allonge endorsing the note to Queens 8105 Lender LLC.

**Marked Exhibit B.**

One Mortgage Deed and Security Agreement dated May 17, 2018, made and executed by Dongan Plaza Inc., pledging the property located at 81-05 Queens Boulevard, Flushing, New York (B/L 1540/1101-1143, f/k/a 1540/7 and 1540/7502) to secure repayment of the aforementioned note in Exhibit "A", recorded on May 25, 2018, in the Queens County Clerk's Office, as CRFN No.: 201800017600.

**Marked Exhibit C.**

One Promissory Note bearing date of June 5, 2018, made and executed by Dongan Plaza Inc., in the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00) payable to MIOF Credit 1 LLC, together with an allonge endorsing the note to Queens 8105 Lender LLC.

**Marked Exhibit D.**

One Mortgage Deed and Security Agreement dated June 5, 2018, made and executed by Dongan Plaza Inc., pledging the property located at 81-05 Queens Boulevard, Flushing, New York (B/L 1540/1101-1143, f/k/a 1540/7 and 1540/7502) to secure repayment of the aforementioned note in Exhibit "C", recorded on June 20, 2018, in the Queens County Clerk's Office, as CRFN No.: 2018000203764.

**Marked Exhibit E.**

One Mortgage Foreclosure Complaint (without Exhibits), dated September 15, 2021, filed by MIOF Credit 1 LLC (original named plaintiff in this action), in the Supreme Court of New York, County of Queens, against Dongan Plaza Inc., et al.

**Marked Exhibit F.**

One Assignment of Mortgage dated February 24, 2022, assigning the mortgage referenced as Exhibit B from MIOF Credit 1 LLC to Queens 8105 Lender LLC. The assignment of Mortgage was recorded on June 10, 2022, in the Queens County Register's Office as CRFN No.: 2022000234684.

**Marked Exhibit G.**

One Assignment of Mortgage dated February 24, 2022, assigning the mortgage referenced as Exhibit D from MIOF Credit 1 LLC to Queens 8105 Lender LLC. The assignment of Mortgage

was recorded on June 10, 2022, in the Queens County Register's Office as CRFN No.: 2022000234686.

**Marked Exhibit H.**

One Consent to Change Attorney executed by Mavrides, Moyal, Packman & Sadkin, LLP dated March 22, 2022, substituting The Camporeale Law Group PLLC as counsel in this action for Plaintiff.

**Marked Exhibit I.**

One Order of Reference entered October 13, 2022, granting Plaintiff's motion for an Order of Reference after default by all named Defendants, issued by the Honorable Allan B. Weiss, Justice of the Supreme Court, Queens County.

**Marked Exhibit J.**

One Affidavit of Amounts Due, sworn to by Kamran Yaghoubzadeh, manager for Plaintiff, sworn to on November 14, 2022.

**Exhibit A**

This Note amends and restates in its entirety, and is given in substitution for, the Notes described in Exhibit A of the Extension and Modification Agreement dated the same date as this Note.

# NOTE

$8,500,000.00                                      Effective as of May 17, 2018

FOR VALUE RECEIVED, DONGAN PLAZA INC (the "**Borrower**"), a New York corporation, having a registered office and an address for purposes of notices and legal process at 102-55 67th Drive, Apt. 3C, Forest Hills, New York 11375, promises to pay to the order of MIOF CREDIT 1 LLC, a Delaware limited liability company, having an address at 660 Madison Avenue, Suite 1700, New York, New York 10065 (the "**Lender**"), or at such other place as may be designated in writing by the holder of this Note, the principal sum of Eight Million Five Hundred Thousand and 00/100 Dollars ($8,500,000.00) in lawful money of the United States of America, together with interest thereon to be computed from the date hereof and to be paid in accordance with the terms of this Note.

A.     Lender is the present owner and holder of that certain promissory note (the "**Existing Note**") described in Exhibit A annexed hereto and made a part hereof, which Existing Note evidences a debt to Lender in the aggregate unpaid principal amount of $8,500,000.00 (the "**Existing Indebtedness**") as of the date hereof.

B.     The Existing Note is secured by that certain mortgage (the "**Existing Mortgage**") described on Exhibit B annexed hereto and made a part hereof, which now secures the Existing Indebtedness.

C.     Borrower and Lender desire to amend and restate in its entirety the Existing Indebtedness evidenced by the Existing Note, and all on the terms and conditions provided in this Note as hereinafter set forth, into a single indebtedness in the principal amount of $8,500,000.00 to be evidenced by this Note and secured by the Mortgage.

D.     Lender and Borrower intend these Recitals to be a material part of this Note.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

## 1. BORROWER'S PROMISE TO PAY

In return for a loan made by Lender to Borrower secured by that certain Mortgage (as hereinafter defined), Borrower promises to pay U.S. $8,500,000.00 (hereinafter, the "**Principal**"), plus interest and other sums due, to the order of Lender, in accordance with the terms of this Note. Borrower will make all payments under this Note in the form of check or federal funds transfer to an account designated by Lender or in such other manner as may be designated by Lender. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is hereinafter called the "**Note Holder**".

## 2. INTEREST

Absent an Event of Default (as hereinafter defined), interest under this Note shall be due and payable at the "**Applicable Interest Rate**" (as hereinafter defined) for the period from the date hereof through the Maturity Date, as the same may be extended, or through the earlier prepayment of the Loan in full. The term "Applicable Interest Rate," as used herein, shall be calculated by adding six hundred forty-five basis points (6.45%) to the Current Index. The Lender will then round the result of this addition to the next highest one-eighth of one percentage point (0.125%) in order to determine the amount of the monthly payment. The Applicable Interest Rate will never be less than eight and one-half percent (8.5%) (the "**Floor Rate**").

The Applicable Interest Rate may change on the first day of every month (each a "**Change Date**") and Borrower's new interest rate will become effective on each Change Date. Notwithstanding anything to the contrary set forth in this Note, the "**Current Index**" utilized in calculating the Applicable Interest Rate on each Change Date shall be the most recent Index (as defined below) figure available as of the date fifteen (15) days before said Change Date. The "**Index**" is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London Market ("**LIBOR**"), as published in The Wall Street Journal. The most recent Index figure available as of the date fifteen (15) days before each Change Date is called the "Current Index". If the Index is no longer available or is otherwise unpublished or in Lender's sole discretion is determined to be substantially recalculated, the Lender will choose a new index. The Lender will give Borrower notice of this choice.

Interest for any month or fractional part thereof shall be calculated on the basis of a 360-day year for the actual number of days elapsed, and shall be due and payable hereunder monthly.

## 3. PAYMENT TERMS

3.1.    Borrower agrees to pay sums under this Note in installments as follows:

3.1.(a)  On the date hereof in the sum of Thirty Thousand One Hundred Four and 17/100 Dollars ($30,104.17), representing interest only from the date of this Note through May 31, 2018.

3.1.(b) Commencing on July 1, 2018 and on the first day of each month thereafter through and until May 17, 2020 (the "**Maturity Date**"), Borrower shall pay to Lender monthly installments of interest only due in accordance with the terms of this Note;

3.1.(c) All accrued and unpaid interest and the unpaid principal balance hereof are due and payable on the earlier to occur of (i) the Maturity Date, or (ii) the date on which the Indebtedness becomes immediately due and payable hereunder.

## 4. MORTGAGE

This Note is a secured by (a) a mortgage lien in the principal sum of Eight Million Five Hundred Thousand and 00/100 Dollars ($8,500,000.00) evidenced by an Extension and

Modification Agreement of even date herewith given by Borrower to Lender encumbering certain premises located in the County of Queens and State of New York, commonly known by the address 81-05 Queens Boulevard, Flushing, New York 11373 (hereinafter referred to as the "**Mortgage**"), and (b) certain other instruments and agreements dated of even date herewith or executed pursuant to this transaction from time to time by Borrower, principal, surety, guarantor, member, endorser or any other parties for the benefit of Lender (said documents and agreements and all other documents and agreements evidencing or securing the Indebtedness are hereinafter referred to, collectively as the "**Loan Documents**"). All of the terms, covenants, conditions and agreements contained in the Mortgage are hereby incorporated herein and made a part hereof.

## 5. APPLICATION OF PAYMENTS

5.1. Each payment made by Borrower, at the discretion of Lender, shall be applied as follows:

5.1.(a) First, to any costs of collection hereunder;

5.1.(b) Then, to any unpaid costs or balances of advances (excluding the original advance of the Principal) made by Lender in connection with the Mortgage and/or any of the Loan Documents and/or this Note and to any other amounts which may be overdue on account of any of the several terms, provisions, conditions or covenants contained in this Note, the Mortgage and the Loan Documents;

5.1.(c) Then, to late charges and any other fees or charges due hereunder if any;

5.1.(d) Then, to interest then due and payable hereunder (at the Default Rate, if applicable);

5.1.(e) And the remainder to the Principal balance hereof.

5.2. Monthly installments of interest shall be paid when due, regardless of the prior acceptance by Lender of payments in excess of the regular monthly installment of interest.

5.3. The designation or allocation by Borrower of the disposition or allocation of any payments made will not be binding upon Lender which may allocate any and all such payments to interest, principal and other fees and charges due hereunder or to any one or more of them, in such amount, priorities and proportions as Lender may determine in its sole discretion in accordance with the terms hereof.

## 6. DEFAULT AND ACCELERATION

6.1. It is hereby expressly agreed that (A) the whole of the principal sum of this Note, (B) interest, default interest, late charges, fees and other sums, as provided in this Note, (C) all other monies agreed or provided to be paid by Borrower in this Note, the Mortgage or the Loan Documents, (D) all sums advanced pursuant to the Mortgage and/or the Loan Documents, and (E) all sums advanced and costs and expenses incurred by Lender in connection with the Indebtedness or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or

Case 1-23-42557-nhl    Doc 6-2    Filed 08/14/23    Entered 08/15/23 13:05:23

any part thereof, or the acquisition or perfection of the security granted pursuant to the Mortgage and the other Loan Documents, whether made or incurred at the request of Borrower or Lender (the sums referred to in (A) through (E) above shall collectively be referred to as the "**Indebtedness**") shall, **WITHOUT NOTICE** (unless otherwise provided herein), become immediately due and payable at the option of the Note Holder upon the happening of any of the following events (each, an "**Event of Default**"):

6.1.(a) Borrower fails to pay any amount due to Lender under this Note when due.

6.1.(b) Borrower fails to keep, observe or perform any other promise, condition or agreement contained in this Note, the Mortgage, the Loan Documents or any other documents described herein or delivered in connection herewith or is otherwise in default under the terms, covenants and conditions of this Note, the Mortgage and the Loan Documents, and such failure or default is not remedied within fifteen (15) days after notice to Borrower thereof, provided, however, that if such failure or default is not capable of being cured or remedied within said fifteen (15) day period, then if Borrower fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion but in any event within thirty (30) days after notice thereof;

6.1.(c) There is a material misstatement in any certificate and/or certification delivered in connection with this Note, the Mortgage, and other Loan Documents, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of Borrower in connection with this Note shall be materially misleading, untrue or incorrect;

6.1.(d) A receiver, liquidator or trustee shall be appointed for Borrower or for any of its property, an assignment shall be made for the benefit of creditors, Borrower or a member of Borrower shall be adjudicated as bankrupt or insolvent, or any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy Reform Act of 1978 codified as 11 U.S.C. §101 et seq., and the regulations issued thereunder, both as hereafter modified from time to time (the "**Federal Bankruptcy Code**"), or any similar federal or state statute, shall be filed by or against Borrower, unless such appointment, assignment, adjudication or petition was involuntary, in which event only if the same is not discharged, stayed or dismissed within thirty (30) days;

6.1.(e) A final non-appealable judgment (or, if the judgment was not appealed, a final judgment for which the time to appear has expired) for the payment of money shall be rendered against Borrower or a member of Borrower which would materially adversely affect Borrower's ability to make payments under this Note and Borrower or such member shall not discharge the same or cause it to be discharged within thirty (30) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered within the applicable appeal period, or shall not thereafter secure a stay of execution pending such appeal;

6.1.(f) Borrower or a member of Borrower shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with

the intent to hinder, delay or defraud Lender of any of its property and/or assets which may be fraudulent under any federal or state bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if Borrower shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if Borrower shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within thirty (30) days from the date of entry thereof;

6.1.(g) Borrower or a member of Borrower defaults under any other note, instrument, agreement, contract, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Borrower, and such event or occurrence is not remedied or cured within ten (10) days after notice thereof or an "event of default" (as defined in such other note, instrument, agreement, contract, pledge, mortgage or encumbrance) shall have occurred; or

6.1.(h) If, without the written consent of Lender, the interest of any member of Borrower is assigned or transferred, or the manager withdraws, resigns or is replaced, unless due to the death or disability of the manager.

6.1.(i) Any of the events enumerated in this Section with respect to any Guarantor or any of its property shall have occurred;

6.2.    After the occurrence of an Event of Default, Lender may accept any payments from Borrower without prejudice to the rights and remedies of Lender provided herein or in the Mortgage or the Loan Documents.

## 7. DEFAULT INTEREST/LATE CHARGES

7.1.    From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by the Note Holder, interest shall accrue on the outstanding Indebtedness, and shall be payable, at a rate equal to twenty-four percent (24%) per annum (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidenced by this Note. The Default Rate shall be in effect at all times after the maturity of the Indebtedness (whether on the Maturity Date, by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Indebtedness, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.2.    Except for any payment of the Indebtedness after acceleration, if any payment (or part thereof) provided for herein shall not be made when due, a late charge of six cents ($0.06) for each dollar so overdue shall become immediately due and payable to the Note Holder as liquidated damages for failure to make prompt payment and the same shall be secured by the Mortgage. This fee is not a penalty but a fee reasonably calculated to reimburse the Note Holder for administrative and staff time. Such charge shall be payable in any event no later than the due date of the next subsequent installment or, at the option of Note Holder, may be deducted from

any deposits held by Lender as additional security for this Note. Nothing herein is intended to or shall extend the due dates set forth for payments under this Note. Such late fee may be charged on any subsequent delinquent payment.

7.3.    Should the Indebtedness or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection, Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable hereunder, all costs of collecting or attempting to collect the Indebtedness, including attorneys' fees and expenses and court costs, regardless of whether any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate from the date paid or incurred by Note Holder until such expenses are paid by Note Holder.

7.4.    Notwithstanding anything to the contrary herein set forth, in no event shall any interest payable under this Note exceed the maximum interest rate permitted under law or the rate that could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate that Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the interest rate hereinabove set forth, other charges, or the Default Rate, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Indebtedness, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of this Note until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Indebtedness for so long as the Indebtedness is outstanding. Borrower agrees to an effective rate of interest that is the rate stated herein plus any additional rate of interest resulting from any other charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit received or to be received by Note Holder, in connection with this Note.

## 8.  WAIVERS

8.1.    Borrower and all parties who may become eligible for the payment of all or any part of the Indebtedness, whether principal, surety, guarantor, pledgor, or endorser, hereby waive demand, notice of demand, presentment for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, notice of dishonor, protest, notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note.

8.2.    The liability of Borrower, any guarantor, pledgor or endorser shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Note Holder, including, but not limited to any extension of time, renewal, waiver or other modification. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Mortgage and other Loan Documents, or any other guaranty or instrument made by agreement of Lender or any other person or party shall release, modify, amend,

waive, extend, change, discharge, terminate or affect the liability of Borrower and any other person or entity who may become liable for the payment of all or any part of the Indebtedness under this Note.

8.3.    No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Note Holder to take further action without further notice or demand on Borrower as provided for in this Note. Any failure of the Note Holder to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time and from time to time thereafter. Lender or any Note Holder may accept late payment, or partial payment, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Note Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.4.    **BORROWER AND EACH ENDORSER AGREE THAT ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE MAY BE INITIATED AND PROSECUTED IN THE STATE OR FEDERAL COURTS, AS THE CASE MAY BE, LOCATED IN THE COUNTY OF QUEENS, STATE OF NEW YORK. BORROWER AND EACH ENDORSER CONSENT TO AND SUBMIT TO THE JURISDICTION OF SUCH COURTS OVER THE SUBJECT MATTER, WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENT THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED OR CERTIFIED MAIL OR REPUTABLE OVERNIGHT DELIVERY SERVICE DIRECTED TO BORROWER OR SUCH ENDORSER AT ITS ADDRESS SET FORTH ABOVE OR TO ANY OTHER ADDRESS AS MAY APPEAR IN LENDER'S RECORDS AS THE ADDRESS OF BORROWER OR SUCH ENDORSER.**

8.5.    **IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, BORROWER AND EACH ENDORSER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY ACTS OR OMISSIONS OF NOTE HOLDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND EACH ENDORSER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.**

8.6.    **BORROWER AND EACH ENDORSER ALSO WAIVE (I) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION, (II) ANY OBJECTION BASED ON FORUM NON CONVENIENS OR VENUE, AND (III) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.**

Case 1-23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

## 9. PREPAYMENT

Borrower has the right to prepay the Indebtedness in whole or in part at any time before it is due. Such prepayment of Indebtedness is known as a "**Prepayment**." When Borrower tenders a Prepayment, Borrower will tell Note Holder that it is doing so. Borrower may not make a Prepayment at any time that Borrower has not made all current monthly payments then due under the term of this Note.

Borrower may make a Prepayment without paying a Prepayment charge. The Note Holder will apply the Prepayment to the outstanding Principal under this Note. However, Note Holder may first apply a Prepayment as provided in Section 5 hereof.

## 10. NOTICES

All notices to be given pursuant to this Note shall be in writing and sufficient if given by personal in-hand service, by reputable overnight delivery service, or by being mailed postage prepaid, by registered or certified mail, to such party's address first herein above set forth, along with a copy to such party's attorneys, as follows: (a) Lender's attorney: Mavrides, Moyal, Packman & Sadkin, LLP, 276 Fifth Avenue, Suite 404, New York, New York 10001, Attention: Eric Sadkin, Esq., and (b) Borrower's attorney: Yu Law P.C., 199-20 32nd Avenue, Ground Floor, Flushing, New York 11358, Attention: Wing Y. Yu, Esq. Notices by registered or certified mail shall be considered delivered and become effective upon the earlier of receipt or three (3) days after mailing thereof. Notices by personal hand delivery shall be considered delivered and become effective on the day delivered or refused. Notices by overnight delivery service shall be considered delivered and become effective on the next business day after being sent. Notices may be given by a party's attorneys or agents with the same force and effect as though given by such party.

## 11. MISCELLANEOUS

11.1.   **Time shall be of the essence with respect to all provisions of this Note.**

11.2.   Borrower represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligations of Borrower.

11.3.   Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, without limitation, legal fees and disbursements of Note Holder, whether with respect to retained firms, the reimbursement of the expenses of in-house staff, counsel, or otherwise. Borrower shall pay to Note Holder on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in enforcing this Note.

11.4.   This Note cannot be changed, modified, amended, waived, extended, discharged or terminated orally or by estoppel or waiver, regardless of any claimed partial performance referable thereto, or by any alleged oral modification or by any act or failure to act on the part of Borrower or Note Holder.

11.5.    The agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising Borrower, and the term "Borrower," as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners or members, as the case may be, shall not thereby be released from any liability. Nothing in the foregoing shall be construed as consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in this Note, the Mortgage or the Loan Documents.

11.6.    Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provision hereof.

11.7.    If any paragraph, clause or provision of this Note is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such voidness, invalidity or unenforceability will not affect the remaining paragraphs, clauses and provisions of this Note, which shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

11.8.    If more than one person is named in this Note as "Borrower," each obligation of Borrower shall be the "joint and several" obligation of such party or entity.

11.9.    The terms and provision of this Note shall be binding upon and inure to the benefit of Borrower and Note Holder and their respective heirs, executors, legal representatives, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law. As used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, executors, legal representative, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law.

11.10.    All the terms and words used in this Note, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Note or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

11.11.    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

11.12.    This Note shall be governed by and construed in accordance with the laws of the State of New York.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

Case 1-23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

IN WITNESS WHEREOF, the undersigned has executed the foregoing Note as of the date first above written.

**DONGAN PLAZA INC**
a New York corporation

By: _____
Name: Tu Kang Yang
Title:  Authorized Signatory

STATE OF NEW YORK      )
                       : ss:
COUNTY OF NEW YORK     )

On the 17th day of May in the year 2018, before me, the undersigned, personally appeared Tu Kang Yang, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

BRADLEY P. WEISS
Notary Public, State of New York
No. 01WE5017524
Qualified in Suffolk County
Commission Expires Sept. 7, 2018 2021

Case 1-23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

## EXHIBIT A
## EXISTING NOTE

Note dated as of February 20, 2018 made by 81-05 Queens Inc to the order of MIOF Credit 1 LLC in the original principal amount of $8,500,000.00.

Case 1-23-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

**EXHIBIT B**
**EXISTING MORTGAGE**

Mortgage and Security Agreement made by 81-05 Queens Inc in favor of MIOF Credit 1 LLC in the original principal amount of $8,500,000.00 dated February 20, 2018 and recorded on March 13, 2018 in the Office of the New York City Register, County of Queens as CRFN 2018000086553 (Mortgage Tax Paid: $238,000.00).

# ALLONGE

Dated: February 24, 2022

Allonge to a certain Note dated as of May 17, 2018 in the principal amount of $8,500,000.00 executed by Dongan Plaza Inc and payable to the order of MIOF Credit 1 LLC (the "**Note**").

Without representation, recourse or warranty, express or implied, pay to the order of:

QUEENS 8105 LENDER LLC
585 Stewart Avenue, #770
Garden City, New York 11530

This Allonge shall be attached to the original Note described above and is hereby made a part thereof.

(SIGNATURES APPEAR ON THE FOLLOWING PAGE)

Dated: February 24, 2022

**MIOF CREDIT 1 LLC**
a Delaware limited liability company

By: _____
Name: Joshua Knoll
Title:   Authorized Signatory

**Exhibit B**

Case 1:23-42557-nhl   Doc 6-2   Filed 08/15/23   Entered 08/15/23 13:05:23

RECORD & RETURN TO:

**Mavrides, Moyal, Packman & Sadkin, LLP**
**276 Fifth Avenue, Suite 404**
**New York, NY 10001**
**Attn: Eric Sadkin, Esq.**

_____[Space Above This Line For Recording Data]_____

### EXTENSION AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT:**

(A) **"Agreement."** This document, which is dated May 17, 2018, and exhibits and riders attached to this document will be called the "Agreement."

(B) **"Borrower."** DONGAN PLAZA INC will be called "Borrower." Borrower is a New York corporation, having a registered office and an address for purposes of notices and legal process at 102-55 67th Drive, Apt. 3C, Forest Hills, New York 11375.

(C) **"Lender."** MIOF CREDIT 1 LLC will be called "Lender" and sometimes "Note Holder." Lender is a Delaware limited liability company having its principal office at 660 Madison Avenue, Suite 1700, New York, New York 10065.

(D) **"Mortgages."** The mortgages, deeds of trust or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

(E) **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments Borrower agrees to make under this Agreement may be called the "Note Holder."

(F) **"Notes."** The Notes which correspond to the Mortgages identified on Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(G) **"Property."** The property which is described in the Mortgage and Security Agreement and in Exhibit B to this Agreement (Legal Description), will be called the "Property." The Property is located at:

81-05 Queens Boulevard
Flushing, New York 11373

Borrower promises and agrees with Lender as follows:

## I. BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES

Borrower agrees to take over all of the obligations under the Notes and Mortgages as extended and modified by this Agreement as Borrower. This means that Borrower will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before Borrower. The total unpaid principal balance of the Notes is U.S. **$8,500,000.00.**

## II. AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A) By signing this Agreement, Lender and Borrower are extending and modifying into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and Borrower has one loan obligation which Borrower will pay as provided in this Agreement.

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and Borrower agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and Borrower agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and Borrower has one loan obligation which Borrower will pay as provided in this Agreement.

## III. AGREEMENT TO CHANGE TERMS OF THE NOTES

Lender and Borrower agree that the terms of the Notes are changed and restated to be the terms of the "Note" which is attached to this Agreement as Exhibit "C". The Note contains the terms of payment for the amounts that Borrower owes to Note Holder. Borrower agrees to pay the amounts due under the Notes in accordance with the terms of the Note. The Note will supersede all terms, covenants, and provisions of the Notes.

## IV. AGREEMENT TO CHANGE TERMS OF THE MORTGAGES

Lender and Borrower agree that the terms of the Mortgages are changed and restated to be the terms of the "Mortgage and Security Agreement" which is attached to this Agreement as

Case 1-23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

Exhibit "D". The Mortgage and Security Agreement secures the Note and will constitute in law a single lien upon the Property. Borrower agrees to be bound by the terms set forth in the Mortgage and Security Agreement which will supersede all terms, covenants and provisions of the Mortgages.

## V.    NO SET-OFF, DEFENSES

Borrower agrees that Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or the Mortgage and Security Agreement.

## VI.    BORROWER'S INTEREST IN THE PROPERTY

Borrower promises that it is the lawful owner of the Property and that Borrower has the right to modify and extend the Notes and Mortgages.

## VII.    WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

## VIII.    OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS

Any person or entity who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

## IX.    LIEN LAW

Borrower will receive all amounts lent to Borrower by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that Borrower will: (A) hold all amounts which Borrower receives and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this Section IX.

## X.    TYPE OF PROPERTY

Check box as applicable.

This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

Case 1:23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling only.

X    This Agreement does not cover real property improved as described above.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

By signing this Agreement, Lender and Borrower agree to all of the above.

**BORROWER:**

**DONGAN PLAZA INC**
a New York corporation


By: _____
Name: Tu Kang Yang
Title:   Authorized Signatory


**LENDER:**

**MIOF CREDIT 1 LLC**
a Delaware limited liability company


By: _____
Name: Brian Steiner
Title: Authorized Signatory

STATE OF NEW YORK    )
                     : ss:

COUNTY OF NEW YORK  )

On the 17th day of May in the year 2018, before me, the undersigned, personally appeared Tu Kang Yang, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

Notary Public

BRADLEY P. WEISS
Notary Public, State of New York
No. 01WE5017524
Qualified in Suffolk County
Commission Expires Sept. 7, 2015 20 21

STATE OF NEW YORK    )
                     : ss:

COUNTY OF NEW YORK  )

On the 17th day of May in the year 2018, before me, the undersigned, personally appeared _____Brian Steiner_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

Notary Public

BRADLEY P. WEISS
Notary Public, State of New York
No. 01WE5017524
Qualified in Suffolk County
Commission Expires Sept. 7, 2015 20-21

Case 1:23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

## EXHIBIT A
### (List of Mortgages and Agreements)

Note dated as of February 20, 2018 made by 81-05 Queens Inc to the order of MIOF Credit 1 LLC in the original principal amount of $8,500,000.00, which Note is secured by that certain Mortgage and Security Agreement made by 81-05 Queens Inc in favor of MIOF Credit 1 LLC in the original principal amount of $8,500,000.00 dated February 20, 2018 and recorded on March 13, 2018 in the Office of the New York City Register, County of Queens as CRFN 2018000086553 (Mortgage Tax Paid: $238,000.00).

# EXHIBIT B
### (Property Description)

Case 1:23-42552-nhl   Doc 6-2   Filed 08/15/23   Entered 08/15/23 13:05:23

## Schedule A Description

Title Number: **PLA-180304Q**              Policy Number: **LX-12292654**

ALL that certain plot, piece or parcel of land, situate, lying and being in Newtown, Borough and County of Queens, City and State of New York, known and designated on a certain map entitled, "Map of Elmhurst Square, situate at Elmhurst, Second Ward, Borough of Queens, City of New York, surveyed by Leonard C.L. Smith", and filed in the office of the Clerk of the County of Queens, November 11, 1905, as and by lots 52 to 56, both inclusive, in Block C and being more particularly bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Queens Boulevard with the easterly side of Dongan Avenue;

RUNNING THENCE northerly along the easterly side of Dongan Avenue, 142.46 feet (deed; 142.27 feet tax map);

THENCE easterly right angles to Dongan Avenue, 100 feet;

THENCE southerly parallel with Dongan Avenue, 85.78 feet (deed; 85.58 feet tax map) to the northerly side of Queens Boulevard;

THENCE southwesterly along the northerly side of Queens Boulevard, 114.95 feet to the point or place of BEGINNING

## EXHIBIT C
**(Note)**

Case 1:23-42557-nhl   Doc 6-2   Filed 08/15/23   Entered 08/15/23 13:05:23

This Note amends and restates in its entirety, and is given in substitution for, the Notes described in Exhibit A of the Extension and Modification Agreement dated the same date as this Note.

# NOTE

$8,500,000.00                                                    Effective as of May 17, 2018

FOR VALUE RECEIVED, DONGAN PLAZA INC (the "**Borrower**"), a New York corporation, having a registered office and an address for purposes of notices and legal process at 102-55 67th Drive, Apt. 3C, Forest Hills, New York 11375, promises to pay to the order of MIOF CREDIT 1 LLC, a Delaware limited liability company, having an address at 660 Madison Avenue, Suite 1700, New York, New York 10065 (the "**Lender**"), or at such other place as may be designated in writing by the holder of this Note, the principal sum of Eight Million Five Hundred Thousand and 00/100 Dollars ($8,500,000.00) in lawful money of the United States of America, together with interest thereon to be computed from the date hereof and to be paid in accordance with the terms of this Note.

A.      Lender is the present owner and holder of that certain promissory note (the "**Existing Note**") described in Exhibit A annexed hereto and made a part hereof, which Existing Note evidences a debt to Lender in the aggregate unpaid principal amount of $8,500,000.00 (the "**Existing Indebtedness**") as of the date hereof.

B.      The Existing Note is secured by that certain mortgage (the "**Existing Mortgage**") described on Exhibit B annexed hereto and made a part hereof, which now secures the Existing Indebtedness.

C.      Borrower and Lender desire to amend and restate in its entirety the Existing Indebtedness evidenced by the Existing Note, and all on the terms and conditions provided in this Note as hereinafter set forth, into a single indebtedness in the principal amount of $8,500,000.00 to be evidenced by this Note and secured by the Mortgage.

D.      Lender and Borrower intend these Recitals to be a material part of this Note.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

## 1. **BORROWER'S PROMISE TO PAY**

In return for a loan made by Lender to Borrower secured by that certain Mortgage (as hereinafter defined), Borrower promises to pay U.S. $8,500,000.00 (hereinafter, the "**Principal**"), plus interest and other sums due, to the order of Lender, in accordance with the terms of this Note. Borrower will make all payments under this Note in the form of check or federal funds transfer to an account designated by Lender or in such other manner as may be designated by Lender. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is hereinafter called the "**Note Holder**".

Case 1-23-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

## 2. INTEREST

Absent an Event of Default (as hereinafter defined), interest under this Note shall be due and payable at the **"Applicable Interest Rate"** (as hereinafter defined) for the period from the date hereof through the Maturity Date, as the same may be extended, or through the earlier prepayment of the Loan in full. The term "Applicable Interest Rate," as used herein, shall be calculated by adding six hundred forty-five basis points (6.45%) to the Current Index. The Lender will then round the result of this addition to the next highest one-eighth of one percentage point (0.125%) in order to determine the amount of the monthly payment. The Applicable Interest Rate will never be less than eight and one-half percent (8.5%) (the **"Floor Rate"**).

The Applicable Interest Rate may change on the first day of every month (each a **"Change Date"**) and Borrower's new interest rate will become effective on each Change Date. Notwithstanding anything to the contrary set forth in this Note, the **"Current Index"** utilized in calculating the Applicable Interest Rate on each Change Date shall be the most recent Index (as defined below) figure available as of the date fifteen (15) days before said Change Date. The "Index" is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London Market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date fifteen (15) days before each Change Date is called the "Current Index". If the Index is no longer available or is otherwise unpublished or in Lender's sole discretion is determined to be substantially recalculated, the Lender will choose a new index. The Lender will give Borrower notice of this choice.

Interest for any month or fractional part thereof shall be calculated on the basis of a 360-day year for the actual number of days elapsed, and shall be due and payable hereunder monthly.

## 3. PAYMENT TERMS

3.1.    Borrower agrees to pay sums under this Note in installments as follows:

3.1.(a) On the date hereof in the sum of Thirty Thousand One Hundred Four and 17/100 Dollars ($30,104.17), representing interest only from the date of this Note through May 31, 2018.

3.1.(b) Commencing on July 1, 2018 and on the first day of each month thereafter through and until May 17, 2020 (the **"Maturity Date"**), Borrower shall pay to Lender monthly installments of interest only due in accordance with the terms of this Note;

3.1.(c) All accrued and unpaid interest and the unpaid principal balance hereof are due and payable on the earlier to occur of (i) the Maturity Date, or (ii) the date on which the Indebtedness becomes immediately due and payable hereunder.

## 4. MORTGAGE

This Note is a secured by (a) a mortgage lien in the principal sum of Eight Million Five Hundred Thousand and 00/100 Dollars ($8,500,000.00) evidenced by an Extension and

Modification Agreement of even date herewith given by Borrower to Lender encumbering certain premises located in the County of Queens and State of New York, commonly known by the address 81-05 Queens Boulevard, Flushing, New York 11373 (hereinafter referred to as the "**Mortgage**"), and (b) certain other instruments and agreements dated of even date herewith or executed pursuant to this transaction from time to time by Borrower, principal, surety, guarantor, member, endorser or any other parties for the benefit of Lender (said documents and agreements and all other documents and agreements evidencing or securing the Indebtedness are hereinafter referred to, collectively as the "**Loan Documents**"). All of the terms, covenants, conditions and agreements contained in the Mortgage are hereby incorporated herein and made a part hereof.

## 5. APPLICATION OF PAYMENTS

5.1. Each payment made by Borrower, at the discretion of Lender, shall be applied as follows:

5.1.(a) First, to any costs of collection hereunder;

5.1.(b) Then, to any unpaid costs or balances of advances (excluding the original advance of the Principal) made by Lender in connection with the Mortgage and/or any of the Loan Documents and/or this Note and to any other amounts which may be overdue on account of any of the several terms, provisions, conditions or covenants contained in this Note, the Mortgage and the Loan Documents;

5.1.(c) Then, to late charges and any other fees or charges due hereunder if any;

5.1.(d) Then, to interest then due and payable hereunder (at the Default Rate, if applicable);

5.1.(e) And the remainder to the Principal balance hereof.

5.2. Monthly installments of interest shall be paid when due, regardless of the prior acceptance by Lender of payments in excess of the regular monthly installment of interest.

5.3. The designation or allocation by Borrower of the disposition or allocation of any payments made will not be binding upon Lender which may allocate any and all such payments to interest, principal and other fees and charges due hereunder or to any one or more of them, in such amount, priorities and proportions as Lender may determine in its sole discretion in accordance with the terms hereof.

## 6. DEFAULT AND ACCELERATION

6.1. It is hereby expressly agreed that (A) the whole of the principal sum of this Note, (B) interest, default interest, late charges, fees and other sums, as provided in this Note, (C) all other monies agreed or provided to be paid by Borrower in this Note, the Mortgage or the Loan Documents, (D) all sums advanced pursuant to the Mortgage and/or the Loan Documents, and (E) all sums advanced and costs and expenses incurred by Lender in connection with the Indebtedness or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or

any part thereof, or the acquisition or perfection of the security granted pursuant to the Mortgage and the other Loan Documents, whether made or incurred at the request of Borrower or Lender (the sums referred to in (A) through (E) above shall collectively be referred to as the "**Indebtedness**") shall, **WITHOUT NOTICE** (unless otherwise provided herein), become immediately due and payable at the option of the Note Holder upon the happening of any of the following events (each, an "**Event of Default**"):

6.1.(a) Borrower fails to pay any amount due to Lender under this Note when due.

6.1.(b) Borrower fails to keep, observe or perform any other promise, condition or agreement contained in this Note, the Mortgage, the Loan Documents or any other documents described herein or delivered in connection herewith or is otherwise in default under the terms, covenants and conditions of this Note, the Mortgage and the Loan Documents, and such failure or default is not remedied within fifteen (15) days after notice to Borrower thereof, provided, however, that if such failure or default is not capable of being cured or remedied within said fifteen (15) day period, then if Borrower fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion but in any event within thirty (30) days after notice thereof;

6.1.(c) There is a material misstatement in any certificate and/or certification delivered in connection with this Note, the Mortgage, and other Loan Documents, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of Borrower in connection with this Note shall be materially misleading, untrue or incorrect;

6.1.(d) A receiver, liquidator or trustee shall be appointed for Borrower or for any of its property, an assignment shall be made for the benefit of creditors, Borrower or a member of Borrower shall be adjudicated as bankrupt or insolvent, or any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy Reform Act of 1978 codified as 11 U.S.C. §101 et seq., and the regulations issued thereunder, both as hereafter modified from time to time (the "**Federal Bankruptcy Code**"), or any similar federal or state statute, shall be filed by or against Borrower, unless such appointment, assignment, adjudication or petition was involuntary, in which event only if the same is not discharged, stayed or dismissed within thirty (30) days;

6.1.(e) A final non-appealable judgment (or, if the judgment was not appealed, a final judgment for which the time to appear has expired) for the payment of money shall be rendered against Borrower or a member of Borrower which would materially adversely affect Borrower's ability to make payments under this Note and Borrower or such member shall not discharge the same or cause it to be discharged within thirty (30) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered within the applicable appeal period, or shall not thereafter secure a stay of execution pending such appeal;

6.1.(f) Borrower or a member of Borrower shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with

the intent to hinder, delay or defraud Lender of any of its property and/or assets which may be fraudulent under any federal or state bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if Borrower shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if Borrower shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within thirty (30) days from the date of entry thereof;

6.1.(g) Borrower or a member of Borrower defaults under any other note, instrument, agreement, contract, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Borrower, and such event or occurrence is not remedied or cured within ten (10) days after notice thereof or an "event of default" (as defined in such other note, instrument, agreement, contract, pledge, mortgage or encumbrance) shall have occurred; or

6.1.(h) If, without the written consent of Lender, the interest of any member of Borrower is assigned or transferred, or the manager withdraws, resigns or is replaced, unless due to the death or disability of the manager.

6.1.(i) Any of the events enumerated in this Section with respect to any Guarantor or any of its property shall have occurred;

6.2.    After the occurrence of an Event of Default, Lender may accept any payments from Borrower without prejudice to the rights and remedies of Lender provided herein or in the Mortgage or the Loan Documents.

## 7. DEFAULT INTEREST/LATE CHARGES

7.1.    From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by the Note Holder, interest shall accrue on the outstanding Indebtedness, and shall be payable, at a rate equal to twenty-four percent (24%) per annum (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidenced by this Note. The Default Rate shall be in effect at all times after the maturity of the Indebtedness (whether on the Maturity Date, by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Indebtedness, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.2.    Except for any payment of the Indebtedness after acceleration, if any payment (or part thereof) provided for herein shall not be made when due, a late charge of six cents ($0.06) for each dollar so overdue shall become immediately due and payable to the Note Holder as liquidated damages for failure to make prompt payment and the same shall be secured by the Mortgage. This fee is not a penalty but a fee reasonably calculated to reimburse the Note Holder for administrative and staff time. Such charge shall be payable in any event no later than the due date of the next subsequent installment or, at the option of Note Holder, may be deducted from

any deposits held by Lender as additional security for this Note. Nothing herein is intended to or shall extend the due dates set forth for payments under this Note. Such late fee may be charged on any subsequent delinquent payment.

7.3.    Should the Indebtedness or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection, Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable hereunder, all costs of collecting or attempting to collect the Indebtedness, including attorneys' fees and expenses and court costs, regardless of whether any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate from the date paid or incurred by Note Holder until such expenses are paid by Note Holder.

7.4.    Notwithstanding anything to the contrary herein set forth, in no event shall any interest payable under this Note exceed the maximum interest rate permitted under law or the rate that could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate that Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the interest rate hereinabove set forth, other charges, or the Default Rate, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Indebtedness, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of this Note until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Indebtedness for so long as the Indebtedness is outstanding. Borrower agrees to an effective rate of interest that is the rate stated herein plus any additional rate of interest resulting from any other charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit received or to be received by Note Holder, in connection with this Note.

## 8. WAIVERS

8.1.    Borrower and all parties who may become eligible for the payment of all or any part of the Indebtedness, whether principal, surety, guarantor, pledgor, or endorser, hereby waive demand, notice of demand, presentment for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, notice of dishonor, protest, notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note.

8.2.    The liability of Borrower, any guarantor, pledgor or endorser shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Note Holder, including, but not limited to any extension of time, renewal, waiver or other modification. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Mortgage and other Loan Documents, or any other guaranty or instrument made by agreement of Lender or any other person or party shall release, modify, amend,

waive, extend, change, discharge, terminate or affect the liability of Borrower and any other person or entity who may become liable for the payment of all or any part of the Indebtedness under this Note.

8.3.    No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Note Holder to take further action without further notice or demand on Borrower as provided for in this Note. Any failure of the Note Holder to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time and from time to time thereafter.  Lender or any Note Holder may accept late payment, or partial payment, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Note Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.4.    **BORROWER AND EACH ENDORSER AGREE THAT ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE MAY BE INITIATED AND PROSECUTED IN THE STATE OR FEDERAL COURTS, AS THE CASE MAY BE, LOCATED IN THE COUNTY OF QUEENS, STATE OF NEW YORK. BORROWER AND EACH ENDORSER CONSENT TO AND SUBMIT TO THE JURISDICTION OF SUCH COURTS OVER THE SUBJECT MATTER, WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENT THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED OR CERTIFIED MAIL OR REPUTABLE OVERNIGHT DELIVERY SERVICE DIRECTED TO BORROWER OR SUCH ENDORSER AT ITS ADDRESS SET FORTH ABOVE OR TO ANY OTHER ADDRESS AS MAY APPEAR IN LENDER'S RECORDS AS THE ADDRESS OF BORROWER OR SUCH ENDORSER.**

8.5.    **IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, BORROWER AND EACH ENDORSER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY ACTS OR OMISSIONS OF NOTE HOLDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND EACH ENDORSER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.**

8.6.    **BORROWER AND EACH ENDORSER ALSO WAIVE (I) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION, (II) ANY OBJECTION BASED ON FORUM NON CONVENIENS OR VENUE, AND (III) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.**

### 9. PREPAYMENT

Borrower has the right to prepay the Indebtedness in whole or in part at any time before it is due. Such prepayment of Indebtedness is known as a **"Prepayment."** When Borrower tenders a Prepayment, Borrower will tell Note Holder that it is doing so. Borrower may not make a Prepayment at any time that Borrower has not made all current monthly payments then due under the term of this Note.

Borrower may make a Prepayment without paying a Prepayment charge. The Note Holder will apply the Prepayment to the outstanding Principal under this Note. However, Note Holder may first apply a Prepayment as provided in Section 5 hereof.

### 10. NOTICES

All notices to be given pursuant to this Note shall be in writing and sufficient if given by personal in-hand service, by reputable overnight delivery service, or by being mailed postage prepaid, by registered or certified mail, to such party's address first herein above set forth, along with a copy to such party's attorneys, as follows: (a) Lender's attorney: Mavrides, Moyal, Packman & Sadkin, LLP, 276 Fifth Avenue, Suite 404, New York, New York 10001, Attention: Eric Sadkin, Esq., and (b) Borrower's attorney: Yu Law P.C., 199-20 32nd Avenue, Ground Floor, Flushing, New York 11358, Attention: Wing Y. Yu, Esq. Notices by registered or certified mail shall be considered delivered and become effective upon the earlier of receipt or three (3) days after mailing thereof. Notices by personal hand delivery shall be considered delivered and become effective on the day delivered or refused. Notices by overnight delivery service shall be considered delivered and become effective on the next business day after being sent. Notices may be given by a party's attorneys or agents with the same force and effect as though given by such party.

### 11. MISCELLANEOUS

11.1.   **Time shall be of the essence with respect to all provisions of this Note.**

11.2.   Borrower represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligations of Borrower.

11.3.   Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, without limitation, legal fees and disbursements of Note Holder, whether with respect to retained firms, the reimbursement of the expenses of in-house staff, counsel, or otherwise. Borrower shall pay to Note Holder on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in enforcing this Note.

11.4.   This Note cannot be changed, modified, amended, waived, extended, discharged or terminated orally or by estoppel or waiver, regardless of any claimed partial performance referable thereto, or by any alleged oral modification or by any act or failure to act on the part of Borrower or Note Holder.

11.5.    The agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising Borrower, and the term "Borrower," as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners or members, as the case may be, shall not thereby be released from any liability. Nothing in the foregoing shall be construed as consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in this Note, the Mortgage or the Loan Documents.

11.6.    Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provision hereof.

11.7.    If any paragraph, clause or provision of this Note is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such voidness, invalidity or unenforceability will not affect the remaining paragraphs, clauses and provisions of this Note, which shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

11.8.    If more than one person is named in this Note as "Borrower," each obligation of Borrower shall be the "joint and several" obligation of such party or entity.

11.9.    The terms and provision of this Note shall be binding upon and inure to the benefit of Borrower and Note Holder and their respective heirs, executors, legal representatives, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law. As used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, executors, legal representative, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law.

11.10.    All the terms and words used in this Note, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Note or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

11.11.    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

11.12.    This Note shall be governed by and construed in accordance with the laws of the State of New York.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

Case 1:23-42557-phl    Doc 6-2    Filed 08/11/23    Entered 08/15/23 13:05:23

IN WITNESS WHEREOF, the undersigned has executed the foregoing Note as of the date first above written.

DONGAN PLAZA INC
a New York corporation

By: _____

Name:  Tu Kang Yang
Title:   Authorized Signatory

STATE OF NEW YORK          )
                                                  : ss:
COUNTY OF NEW YORK   )

On the 17th day of May in the year 2018, before me, the undersigned, personally appeared Tu Kang Yang, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

BRADLEY P. WEISS
Notary Public, State of New York
No. 01WE5017524
Qualified in Suffolk County
Commission Expires Sept. 7, 2013 2021

**EXHIBIT A**
**EXISTING NOTE**

Note dated as of February 20, 2018 made by 81-05 Queens Inc to the order of MIOF Credit 1 LLC in the original principal amount of $8,500,000.00.

Case 1-23-42557-nhl    Doc 62    Filed 08/15/23    Entered 08/15/23 13:05:23

**EXHIBIT B**
**EXISTING MORTGAGE**

Mortgage and Security Agreement made by 81-05 Queens Inc in favor of MIOF Credit 1 LLC in the original principal amount of $8,500,000.00 dated February 20, 2018 and recorded on March 13, 2018 in the Office of the New York City Register, County of Queens as CRFN 2018000086553 (Mortgage Tax Paid: $238,000.00).

## EXHIBIT D
### (Mortgage and Security Agreement)

# MORTGAGE AND SECURITY AGREEMENT

between

## DONGAN PLAZA INC
a New York corporation
102-55 67th Drive, Apt. 3C
Forest Hills, New York 11375

to

## MIOF CREDIT 1 LLC
a Delaware limited liability company
660 Madison Avenue, Suite 1700
New York, New York 10065

Dated: as of May 17, 2018

ADDRESS OF MORTGAGED PROPERTY:

81-05 Queens Boulevard
Flushing, New York 11373

Block: 1540; Lot: 7
County: Queens

Return to & Prepared by:
Mavrides, Moyal, Packman & Sadkin, LLP
276 Fifth Avenue, Suite 404
New York, New York 10001
Attention: Eric Sadkin, Esq.

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (this "**Mortgage**") made effective as of the 17th day of May, 2018.

BETWEEN

DONGAN PLAZA INC, a New York corporation having an office and an address for purposes of notices and legal process at 102-55 67th Drive, Apt. 3C, Forest Hills, New York 11375 (the "**Mortgagor**"),

as Mortgagor,

and

MIOF CREDIT 1 LLC, a Delaware limited liability company having an address at 660 Madison Avenue, Suite 1700, New York, New York 10065 (the "**Mortgagee**"),

as Mortgagee,

WITNESSETH, that to secure the (a) payment of that certain Indebtedness, in the original principal amount of Eight Million Five Hundred Thousand and 00/100 Dollars ($8,500,000.00) (the "**Loan Amount**"), lawful money of the United States, as evidenced by that Note of even date herewith made by Mortgagor for the benefit of Mortgagee (the "**Note**"), together with all interest payable under the Note, (b) the payment of all amounts, sums and expenses due under the Note, this Mortgage and any other Loan Document (as hereinafter defined) and (c) the payment and performance of such other obligations as are set forth in this Mortgage, Mortgagor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Mortgagee, and grants a security interest to Mortgagee in, the following property, rights, interests and estates now owned or hereafter acquired by Mortgagor (collectively, the "**Premises**"):

ALL that certain plot, piece or parcel of land located in the County of Queens and State of New York commonly known by the address 81-05 Queens Boulevard, Flushing, New York 11373, as more particularly described in SCHEDULE A annexed hereto and hereby made a part hereof (the "**Land**").

TOGETHER with all additional lands, estates and development rights hereafter acquired by Mortgagor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Mortgage;

TOGETHER with any after acquired interest the Mortgagor may acquire by reason of the withdrawal and/or abandonment of the Part 20 offering plan submitted for filing with the New York Attorney General on August 19, 2016 (Plan ID CD 160056) for the Dongan Tower Condominium.

TOGETHER with all buildings, structures and improvements of every kind and nature whatsoever now or hereafter located, erected, or placed upon the Land, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements of or to any of the foregoing (collectively, the "**Improvements**");

TOGETHER with all machinery, appliances, apparatus, decorations, piping, conduits, fixtures, chattels, articles of personal property and other property now owned or hereafter acquired and/or now or hereafter attached to or used in connection with the Premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, heating, ventilating and air conditioning systems, sprinkler systems, power systems, washtubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, building materials and components, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing or hereafter erected on any of the Premises, together with any and all replacements thereof and additions thereto, proceeds or products thereof (collectively, the "**Equipment**"). The term "fixtures", as used herein, means all items that are physically attached to buildings, including, without limitation, items such as equipment used to supply air conditioning, heat, gas, water, light, laundry, drying, dishwashing, garbage disposal and other services, but excluding those items that are considered "consumer goods" under the law which Mortgagor acquires more than ten (10) days after the date of the Note;

TOGETHER with all easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the improvements and every part and parcel thereof, with the appurtenances thereto;

TOGETHER with all awards heretofore and hereafter made to Mortgagor for taking by eminent domain the whole or any part of the Land or any easement therein, including any awards for changes of grade of streets, which awards are hereby assigned to Mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and Mortgagor hereby agrees, upon request, to make, execute, and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever;

TOGETHER with all right, title and interest of Mortgagor in and to all insurance or other proceeds of, and any unearned premiums on, any insurance policies required to be maintained by Mortgagor hereunder;

TOGETHER with the rents, income, issues and profits of all property covered by this Mortgage which are assigned to Mortgagee in accordance with the terms of this Mortgage. The term "rents, income, issues and profits" refer to any monies that Mortgagor may receive by using the Land for income producing purposes;

TOGETHER with all right, title and interest of Mortgagor in and to all other "general intangibles," "accounts" and "proceeds" (as such terms are defined in the Uniform Commercial Code) arising with respect to the property covered by this Mortgage, with respect to which Mortgagee shall have all of the rights and remedies of a secured party under the Uniform Commercial Code;

TOGETHER with, to the extent transferable by Mortgagor, all franchises, permits, licenses and other rights, respect the use, occupation and operation of the Premises and the activities conducted thereon and therein;

AND Mortgagor covenants with Mortgagee as follows:

**A.    REPRESENTATIONS AND WARRANTIES.**    Mortgagor represents and warrants that, as of the date hereof, and at all times thereafter during the term hereof:

1.  Warranty of Title. Subject to the title exceptions set forth in the Commitment for Title Insurance issued by Primary Land Abstract NY Inc., as agent for Old Republic National Title Insurance Company (Title No. PLA-180304Q) (collectively, the **"Permitted Exceptions"**), Mortgagor is seized of an indefeasible estate in fee simple in, and has good and marketable title, insurable at regular rates, to the Premises, the Improvements and the Equipment and has good right, full power and lawful authority to mortgage, pledge, grant and convey the same as provided herein, and Mortgagee, subject to the terms of this Mortgage, may at all times peaceably and quietly enter upon, hold, occupy and enjoy the Premises in accordance with the terms hereof;

2.  Binding Obligations.    This Mortgage, the Note and the other Loan Documents (as hereinafter defined) are valid and binding obligations enforceable in accordance with their respective terms, subject as to enforceability to the availability of equitable relief and to the effect of applicable bankruptcy, arrangement or insolvency laws and other similar state and federal laws affecting the enforcement of creditor's rights generally, and the execution and delivery thereof do not contravene any contract or agreement to which Mortgagor is a party or by which Mortgagor or any of its properties may be bound, and do not contravene any law, order, decree, rule or regulation to which Mortgagor is subject;

3.  Authority. If Mortgagor is a corporation, or if Mortgagor is a partnership and the general partner or directing partner thereof is a corporation, the execution of this Mortgage has been duly authorized by the board of directors of Mortgagor or said general partner or directing partner, as the case may be. If Mortgagor is a limited liability company, the execution of this Mortgage has been duly authorized by each member and manager of Mortgagor, and, to the extent that any member or manager of Mortgagor is a limited liability company, corporation or partnership, by each member, board of directors and/or partner, as the case may be, of each such member entity or manager entity.

Case 1-23-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

4. Secured Indebtedness; Other Loan Documents. This Mortgage and the grants, assignments and transfers made hereunder are also given for the purpose of securing the performance of all other obligations of Mortgagor contained herein and in the Note or in any other documents other than the Note and this Mortgage now or hereafter executed by Mortgagor and/or others in favor of Mortgagee, which wholly or partially evidence, secure or guaranty payment of the Note (collectively, the **"Other Loan Documents"**) and the performance of each obligation of Mortgagor contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of this Mortgage and Security Agreement, the Note or any other documents.

## B.    MORTGAGOR COVENANTS.    Mortgagor covenants and agrees that:

1. Payment of the Indebtedness.    Mortgagor shall pay all indebtedness evidenced by the Note at the time and in the manner provided in the Note and in this Mortgage in lawful money of the United States of America.

2. Payment of Other Obligations Secured.  Mortgagor shall pay the following, in such order of priority as Mortgagee may determine in its sole discretion: (a) the Indebtedness (as such term is defined in the Note); (b) all interest, prepayment premiums, default interest, late charges and other sums, as provided in the Note, this Mortgage or the Other Loan Documents; (c) all other moneys agreed or provided to be paid by Mortgagor in the Note, this Mortgage or the Other Loan Documents; and (d) such additional amounts as may be incurred, paid out or advanced by Mortgagee under any provision of this Mortgage, the Note and Other Loan Documents and costs and expenses incurred by Mortgagee in connection with the Indebtedness or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or any part thereof, or the acquisitions or perfection of the security therefor, whether made or incurred at the request of Mortgagor or Mortgagee.

3. Incorporation by Reference.    All the covenants, conditions and agreements contained in the Note and the Other Loan Documents are hereby made a part of this Mortgage and Security Agreement to the same extent and with the same force as if fully set forth herein.

4. Performance of Obligations.    Mortgagor shall perform and keep each promise, agreement and obligation of Mortgagor (a) contained in this Mortgage or incorporated in this Mortgage by reference or contained in any documents executed by Mortgagor relating to the loan which this Mortgage secures, and (b) required to be performed by Mortgagor in accordance with the terms of any lease, as well as any other document which creates or defines Mortgagor's rights in the Premises.

5. Maintain Good Standing. If Mortgagor is a corporation, partnership or limited liability company, maintain, preserve and keep in full force and effect, at all times, its existence, good standing, franchises, rights and privileges as an entity under the laws of the state of its organization and the state in which the Premises is located and its right to own and operate the Premises and to transact business in such state(s).

6. Single Purpose Entity.    Until such time as the Indebtedness is paid in full, Mortgagor has not and shall not: (a) engage in any business or activity other than the ownership, operation,

development and maintenance of the Premises and activities incidental thereto; (b) acquire or own any material assets other than (i) the Premises, and (ii) such personal property as may be necessary for the operation of the Premises; (c) merge into or consolidate with any person or entity or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure, without in each case Mortgagee's consent; (d) fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, or without the prior written consent of Mortgagee, amend, modify, terminate or fail to comply with the provisions of Mortgagor's partnership agreement, articles or certificate of incorporation or similar organizational documents, as the case may be, as same may be further amended or supplemented, if such amendment, modification, termination or failure to comply would adversely affect the ability of Mortgagor to perform its obligations hereunder, under the Note or under the Other Loan Documents; (e) own any subsidiary or make any investment in, any person or entity without the consent of Mortgagee; (f) commingle its assets with the assets of any of its general partners, affiliates, principals or of any other person or entity; (g) incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the indebtedness, and trade payables in the ordinary course of its business of owning and operating the Premises, provided that such debt is paid within sixty (60) days of when incurred; (h) become insolvent and fail to pay its debts and liabilities from its assets as the same shall become due; (i) fail to maintain its records, books of account and bank accounts separate and apart from those of the general partners, principals and affiliates of Mortgagor, the affiliates of a general partner of Mortgagor, and any other person or entity; (j) enter into any contract or agreement with any general partner, principal or affiliate of Mortgagor, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any general partner, principal or affiliate of Mortgagor; (k) seek the dissolution or winding up in whole, or in part, of Mortgagor; (l) maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any general partner, principal or affiliate of Mortgagor, or any general partner, principal or affiliate thereof or any other person; (m) hold itself out to be responsible for the debts of another person; (n) make any loans or advances to any third party, including any general partner, principal or affiliate of Mortgagor, or any general partner, principal or affiliate thereof; (o) fail to file its own tax returns to the extent required; (p) fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or person or to conduct its business solely in its own name in order not (i) to mislead others as to the identity with which such other party is transacting business, or (ii) to suggest that Mortgagor is responsible for the debts of any third party (including any general partner, principal or affiliate of Mortgagor, or any general partner, principal or affiliate thereof); (q) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; or (r) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors.

## C.     RIGHTS, AGREEMENTS AND OBLIGATIONS OF MORTGAGOR.

1. Use of Premises; Zoning. If at any time the then existing use or occupancy of any of the Premises shall, pursuant to any zoning or other law, ordinance or regulations, be permitted only so long as such use or occupancy shall continue, Mortgagor will not cause or permit such use

or occupancy to be discontinued without the prior written consent of Mortgagee; and Mortgagor will not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance, or other public or private restrictions, limiting or defining the uses which may be made of the Premises or any part thereof.

2. <u>Security Agreements</u>.　　Mortgagor hereby grants to Mortgagee a security interest in and to all of Mortgagor's right, title and interest in and to any Equipment. This Mortgage shall also constitute a security agreement. Mortgagee shall have, in addition to all rights and remedies provided herein, and in any other agreements, commitments and undertaking made by Mortgagor to Mortgagee, all of the rights and remedies of a "secured party" under the said Uniform Commercial Code. This provision shall be self-operative, but the Mortgagor shall, upon Mortgagee's reasonable request, execute and deliver to Mortgagee, from time to time, such further instruments to perfect, re-record, renew, continue or otherwise create or preserve Mortgagee's security interests in and to any Equipment or other personal property, or for applicable fixture filings (including further Security Agreements) and hereby irrevocably appoints Mortgagee the attorney-in-fact of Mortgagor to execute, deliver and file such financing statements and other instruments as Mortgagee may require in order to impose the lien hereof and the security interest hereunder upon the Equipment and/or personal property.

3. <u>Construction or Repairs on the Premises</u>. Mortgagor agrees to complete in a good and workmanlike manner all construction and repairs relating to the Premises. Mortgagor will pay when due all costs relating to any such construction or repair and will not permit any mechanic's lien or other lien against the Premises which are not satisfied, released or bonded against as hereinafter provided. Mortgagor will (1) promptly begin and complete any construction or repair projects; (2) complete any such projects in accordance with plans approved by Mortgagee; (3) allow Mortgagee to inspect any such project at any time; and (4) replace any unsatisfactory work within thirty (30) days after receiving a written notice from Mortgagee which requires such replacement. All improvements shall be of first-class grade quality, material, manufacture, design, capacity and color (a) which conform to the standard, if any, adopted for the building and (b) shall, when completed, be of such character as not to reduce the value and utility of the building below its value and utility before such improvements. Upon request by Lender, Mortgagor shall provide any and all documentation regarding the improvements made, including but not limited to; approved plans, architectural surveys, lien waivers from contractors, subcontractors, vendors and material men for all work and services, all receipts and invoices as well as any other documentation the Mortgagee requests in its reasonable discretion.

4. <u>Repair and Maintenance of the Premises</u>.

(a) Mortgagor shall maintain and keep the Premises in good condition and repair and shall promptly restore, in a good and workmanlike manner, any buildings which may be damaged or destroyed.

(b) Mortgagor shall not cause or permit any building or improvement upon the Premises to be, removed, demolished or structurally altered, in whole or in part, or any fixture or article of personal property to be removed or destroyed, without the prior written consent of Mortgagee except that Mortgagor shall have the right to remove and dispose of, free from the lien of this Mortgage, such Equipment as from time to time may become worn out or obsolete or in the

ordinary course of business, provided that either (1) simultaneously with or prior to such removal, any such Equipment shall be replaced with other Equipment of a value at least equal to that of the replaced Equipment and free from any Security Agreement, and by such removal and replacement Mortgagor shall be deemed to have subjected such Equipment to the lien of this Mortgage, or (2) any net cash proceeds received from such disposition shall be paid over promptly to Mortgagee to be applied to the last installments due on the indebtedness secured hereby, without any charge for prepayment.

(c) Mortgagor will not abandon the Premises for more than thirty (30) days or cause or permit any waste to the buildings, improvements, fixtures or articles of personal property covered by this Mortgage. The term "waste" means allowing the Premises to deteriorate when Mortgagor could prevent the deterioration and loss in the Premises' value, to any material extent.

(d) Mortgagor will pay all license fees and similar municipal charges for the use of vaults or other areas now or hereafter used in connection with the Premises and will not, unless so required by any governmental agency having jurisdiction, discontinue such use without the prior written consent of Mortgagee.

(e) Mortgagor shall pay when due all claims for labor performed and materials furnished in connection with the Premises and shall not to permit any mechanic's, materialman's, laborer's or other similar lien to be filed against the Premises or any part thereof, or against the revenues, rents, issues, income or profits arising therefrom. In the event any such lien shall be so filed, Mortgagor shall cause the same to be removed of record (by payment, posting of bond, or otherwise) within thirty (30) days after notice thereof. Mortgagor shall, in addition to the foregoing, do, or cause to be done, at the cost of Mortgagor and without expense to Mortgagee, everything necessary to preserve in full the lien of this Mortgage.

(f) Mortgagor will comply with all laws, ordinances, orders, rules and regulations of all federal, state, county and municipal governments and appropriate departments, commissions, boards and offices thereof which, at any time, are applicable to the Premises and with all requirements, orders and notices of violation thereof issued by any governmental department.

(g) If Mortgagor fails to comply with this Section, then, in addition to all other rights or remedies herein set forth, Mortgagee and/or its representatives may, but shall not be obligated to, enter upon the Premises to protect, restore or repair the same. Any costs or expenses of Mortgagee incurred in connection with or as a result of Mortgagor's failure to comply with this Section, including any cost or expense incurred or expended by Mortgagee in connection with protecting, restoring or repairing the Premises, shall be payable by Mortgagor on demand and shall be deemed a part of the Indebtedness secured by the lien of this Mortgage, with interest thereon as herein provided. Mortgagor hereby waives any claim against Mortgagee arising out of any act or thing done by Mortgagee pursuant hereto (other than claims arising from the gross negligence or willful misconduct of Mortgagee).

Case 1:23-42557-nhl   Doc 6-2   Filed 08/15/23   Entered 08/15/23 13:05:23

5. Insurance.

      (a) Mortgagor shall provide, maintain and keep in force policies of insurance with respect to each of the Premises and all Equipment and personal property owned by Mortgagor with respect to the Premises, as follows:

      (i)    Insurance against loss or damage to the improvements located on the Premises and to the personal property by an **"All-Risk"** insurance policy without any special exclusions or special conditions, including therein, without intending to limit the nature of the risks to be insured against by such a policy, insurance against risks of fire, lightning, as well as other risks embraced by coverage of the type known as the special form of extended coverage, and riot and civil commotion, collapse, vandalism and malicious mischief, and the other risks as from time to time covered by an All-Risk insurance policy and covering demolition and increased cost of construction due to enforcement of then current building codes and other laws. The insurance shall be in amounts sufficient to prevent Mortgagee or Mortgagor from becoming a co-insurer under the terms of the applicable policies, but in any event in an amount not less than one hundred percent (100%) of the then full replacement cost of the improvements located on the Premises and of the Equipment (exclusive of the cost of excavations, foundations, and footing below the lowest basement floor) without deduction for physical depreciation, evidenced by a replacement cost endorsement;

      (ii)    If requested by Lender, boiler and pressure vessel insurance, including air tanks, pressure piping and major air conditioning equipment if the Premises contain equipment of the nature ordinarily covered by such insurance and for an amount not less than Five Million Dollars ($5,000,000.00) or such larger sum as Mortgagee may reasonably require, and with not more than Ten Thousand Dollars ($10,000.00) deductible from the loss payable for any casualty;

      (iii)    Commercial general liability insurance including contractual liability on an "occurrence basis" for the Premises and to common areas on adjoining properties, if any, and every part thereof insuring against all losses, claims, demands or actions for personal injury, including bodily injury, death or property damage occurring upon the Premises, such insurance to afford immediate protection as of the date of this Mortgage and at all times thereafter until the Indebtedness is paid in full, and to have a combined single limit of One Million and 00/100 Dollars ($1,000,000.00) or such greater limits as Mortgagee shall reasonably require. Mortgagor may maintain such policy with not more than a Ten Thousand Dollars ($10,000.00) deductible; Mortgagor may use Umbrella and/or Excess policy to satisfy such requirements.

      (iv)    Such other insurance as Mortgagee may reasonably require, including but not limited to insurance required under any lease of the Premises or a portion thereof.

      (b) All policies of insurance to be furnished hereunder shall be effected under valid and enforceable policies issued by insurers of recognized responsibility, the insurance policies and the insurers to be satisfactory to Mortgagee with Standard Mortgage Clauses attached to all policies in favor of and in form satisfactory to Mortgagee, which insurers shall have a then current financial ability and standing equivalent to Best's Financial Rating and Policyholders' Rating of

at least A:VII and which are authorized to transact fire and casualty and liability insurance in New York.

(c) Mortgagor shall pay all premiums and charges for the aforesaid insurance and upon failure to do so Mortgagee may, but shall not be obligated to, make such payments, in which event the amount so paid by Mortgagee shall be payable by Mortgagor on demand and shall be deemed a part of the Indebtedness secured hereby. Such policies shall contain a provision that no act or omission of Mortgagor will affect or limit the obligation of the insurance company to pay the amount of any loss sustained and shall provide that the policies may not be canceled, non-renewed (including any rejection or denial of a requested renewal), modified or have the coverage thereunder reduced except upon thirty (30) days advance written notice to Mortgagee. Copies of the insurance policies together with appropriate certificates evidencing such insurance shall be deposited with Mortgagee on the date hereof. Mortgagee shall not, however, be deemed to have knowledge of the contents of such policies by reason of its custody thereof. Prior to the expiration of any required insurance policy, Mortgagor shall deposit with Mortgagee any renewals or replacements thereof or endorsements thereto. Each such new or renewal policy shall bear a notation by the insurer or its authorized agent evidencing payment of the required premium. The minimum limits of the comprehensive general liability policy of insurance shall in no way limit or diminish Mortgagor's liability under any indemnification provisions of this Mortgage or the Note. Mortgagee shall have the right, at any time, on not less than thirty (30) days' notice to Mortgagor to require that Mortgagor increase the amounts and/or types of coverage required to be maintained hereunder to the amounts and/or types of coverages then reasonably deemed necessary for property similarly situated as the Premises.

(d) If any portion of the Premises is located in an area (a "**Flood Hazard Area**") identified by the Secretary of Housing and Urban Development as an area having special flood hazards and in which flood insurance has been made available by the National Flood Insurance Act of 1968 and/or the Flood Disaster Protection Act of 1973, as the same may have been or may hereafter be amended, modified or supplemented, Mortgagor shall additionally keep the buildings and improvements with respect to such portion of the Premises insured against loss by flood in an amount at least equal to the lesser of (1) the then outstanding principal balance secured by this Mortgage, or (2) the maximum limit of coverage available with respect to such buildings and the improvements under such Acts. Said insurance shall be provided by a company or companies satisfactory to Mortgagee. Mortgagor represents and warrants to Mortgagee that the Premises is not located in a Flood Hazard Area.

(e) Mortgagee, from time to time, may furnish to any insurance agency, company or any other person any information contained in or extracted from any insurance policy required or delivered to Mortgagee in accordance with this Mortgage and any information concerning the Indebtedness.

(f) Subject to the provisions below, if any hazard insurance proceeds are received because of damage to the Premises, then, if there exists an Event of Default, Mortgagee may use the proceeds to repay all amounts Mortgagor owes under the Note or this Mortgage or, otherwise, Mortgagee shall make available to Mortgagor all of the proceeds to repair the damage to the Premises, or Mortgagee may make available to Mortgagor all or part of the proceeds to use for any other purpose approved by Mortgagee (but Mortgagee does not have to see to the proper use of

any proceeds paid over to Mortgagor). If hazard insurance proceeds are used to repay the sums borrowed under the Note or this Mortgage, such proceeds shall be applied to those installments of principal last coming due. (Property loss funds will be paid in accordance with the policy provisions.)

(g) In the event of loss or damage to the Premises, if Mortgagor does not promptly make proof of loss to the insurance company, Mortgagee is hereby appointed Mortgagor's attorney-in-fact with full and absolute authority to: (a) make such proof of loss; (b) compromise and settle any claim for loss; and (c) give releases or acquittances to the insurance company in connection with such settlement of any claim for insurance proceeds. Mortgagee's appointment as Mortgagor's attorney-in-fact is irrevocable and coupled with an interest, with full power of substitution, and shall not be affected by Mortgagor's subsequent disability or incompetence. Said appointment of Mortgagor's attorney-in-fact will be specific and limited to this Premises only.

(h) Mortgagor shall not take out separate insurance concurrent in coverage or contributing in the event of loss with the insurance coverage required to be maintained hereunder unless Mortgagee is included thereon under a standard Mortgage Clause acceptable to Mortgagee. Mortgagor shall immediately notify Mortgagee whenever any such separate insurance is taken out and shall promptly deliver to Mortgagee the policy or policies of insurance. In the event of a foreclosure or transfer of title to either of the Premises in lieu of foreclosure, or by purchase at foreclosure sale, all interest in any insurance policies then in force shall pass to Mortgagee or any transferee or purchaser, as the case may be.

6. <u>Taxes and Other Sums Which Mortgagor Must Pay</u>.

(a) Mortgagor agrees to pay on or before the date of delinquency, any and all general and special city and county taxes of every kind and nature, any and all real estate, property and ad valorem taxes, personal property taxes, assessments, water rates, sewer rents, fines, impositions, levies, permits, inspection and license fees, all special assessments for public improvements (without permitting any improvement bond to be issued for special assessments) and all other charges now or hereafter levied or imposed upon or assessed against the Premises or any part thereof by any municipality or other governmental authority or upon the revenues, rents, issues, income and profits of the Premises or arising in respect of the occupancy, use or possession thereof or the use of walks, chutes, areas and other space beyond the lot line of the Premises and on or abutting the public sidewalks and/or highways in front or adjoining the Premises or pursuant to any environmental protection act for the use of any furnace, compactors, incinerators, parking areas or for other matters covered by any such act, together with any penalties and interest on any of the foregoing (hereinafter collectively referred to as "**Taxes**"), and in default thereof, Mortgagee may pay the same, which costs of Mortgagee shall be secured by this Mortgage with interest thereon as herein provided. Mortgagor will repay all such costs upon demand. Mortgagor shall notify Mortgagee immediately upon receipt by Mortgagor of any notice of increase in the assessed value of either of the Premises and agrees that Mortgagee, in the name of Mortgagor, may (but shall not be obligated to) contest by appropriate proceedings such increase in assessment. Mortgagor agrees to notify Mortgagee and the appropriate taxing authorities immediately upon the happening of any event which does or may affect the value of the Premises, the basis of the Premises or the availability of any exemption to which Mortgagor is or may be entitled.

Case 1-22-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

(b) Mortgagor agrees to pay no later than the date of delinquency : (i) all Taxes, encumbrances, charges and liens relating to the Premises; (ii) all costs, fees and expenses of this Mortgage; (iii) all lawful fees or charges for any statement regarding the obligation secured by this Mortgage; (iv) such other charges as Mortgagee deems reasonable for services rendered by Mortgagee and furnished at the request of Mortgagor, to the extent permitted by law; and (v) all payments and monetary obligations required of the owner of the Premises under any declaration of covenants, conditions or restrictions relating to the Premises.

(c) Mortgagor agrees to pay any and all taxes, charges, fees and/or levies by reason of Mortgagee's ownership of the Note and/or this Mortgage and/or resulting from the exercise by Mortgagee of any of its rights and/or remedies provided for under this Mortgage, except for income, franchise and similar taxes of Mortgagee. The obligations assumed by Mortgagor pursuant to this section shall survive the exercise by Mortgagee of any of its rights and/or remedies under this Mortgage.

(d) If Mortgagor fails to make any payment required by this Section 6, Mortgagee may elect (but shall not be obligated) to make or advance the payment, together with any costs, expenses, fees or charges which might be imposed by Mortgagee, at its sole option. Mortgagor shall, on demand, reimburse Mortgagee for any and all such amounts paid by Mortgagee and any such payments shall be deemed part of the indebtedness secured by lien of this Mortgage.

7. Assignment by Mortgagor of Awards and Damages to Mortgagee. Mortgagor assigns to Mortgagee all amounts due, paid or payable to Mortgagor because of a judgment, settlement or compromise relating to or made in connection with: (a) any injury or damage to the Premises; (b) the transaction for which financing is provided under the Note; or (c) any condemnation proceeding affecting the Premises (or any part of either of the Premises). The terms "judgment, settlement or compromise" refer to the result of a legal dispute that is resolved either before a court or settled by the parties to the legal dispute. Mortgagee may, at its option, commence, intervene in, appear in and prosecute in its own name any action or proceeding, and may make any compromise or settlement in connection with any such action or proceeding. If requested by Mortgagee, Mortgagor agrees to execute, within five (5) days after such request, any additional documents relating to the assignment given by this section. Subject to the provisions of Section5(g) above, if any proceeds are received pursuant to this section, Mortgagee, at its sole option, may (1) use the proceeds to repay all amounts Mortgagor owes under the Note or this Mortgage; (2) use or make available to Mortgagor all or part of the proceeds to repair any damage to the Premises; or (3) make available to Mortgagor the proceeds for any other purpose approved by Mortgagee (but Mortgagee does not have to see to the proper use of any proceeds paid over to Mortgagor).

8. Sums Advanced; Other Costs.

(a) Mortgagor agrees to immediately pay upon ten days written notice, any sums advanced or paid by Mortgagee under any clause or provision of this Mortgage. Any such sum paid, until repaid, will be secured by this Mortgage and will bear interest from the date it was advanced or paid pursuant to the terms of the Note.

(b) If any action or proceeding is commenced by or against Mortgagee, including an action to foreclose this Mortgage or to enforce, declare or adjudicate any rights or obligations

under this Mortgage or affecting the Premises, or if it otherwise becomes necessary to defend or uphold the lien of this Mortgage, Mortgagee may appear, defend, prosecute, retain counsel and take such action as Mortgagee shall deem advisable, and the costs thereof (including without limitation, reasonable attorneys' fees and disbursements and all applicable statutory costs, allowances and disbursements), together with interest at the Applicable Interest Rate (or at the Default Rate if an Event of Default exists), shall be paid by Mortgagor, on demand, to Mortgagee and shall be secured by this Mortgage. In any action or proceeding to foreclose this Mortgage or to recover or collect the Indebtedness, the provisions of law relating to the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

9.  Mortgagor's Right to Collect and Receive Rents and Profits.

(a) As further security for the payment of the Indebtedness, Mortgagor hereby assigns to Mortgagee all of Mortgagor's right, title and interest in and to any rents, income and profits from the Premises and all of Mortgagor's right, title and interest in and to all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases, and shall, upon demand, deliver to Mortgagee an executed counterpart of each such lease or other document. Nothing in the foregoing sentence shall be construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such lease or other document or otherwise to impose any obligation on Mortgagee (including, without limitation, any liability under the covenant of quiet enjoyment contained in any lease or in any law of the State in which the respective Premises is located if any tenant shall have been joined as a party defendant in any action to foreclose this Mortgage and shall have been barred and foreclosed thereby of all right, title, interest and equity of redemption in the Premises), except that Mortgagee shall be accountable for any money actually received pursuant to such assignment. Such assignment and grant shall continue in effect until the Indebtedness secured by this Mortgage is paid in full, the execution of this Mortgage constituting and evidencing the irrevocable consent of Mortgagor to the entry upon and taking possession of the Premises by Mortgagee pursuant to such grant, whether foreclosure has been instituted or not and without applying for a receiver. The above assignment is a present assignment effective immediately.

(b) Notwithstanding the foregoing provisions of this section, until Mortgagee declares an Event of Default under the Note or this Mortgage, Mortgagee hereby waives the right to enter upon and take possession of the Premises for the purpose of collecting said rents, issues and profits, and Mortgagor shall have the right to collect and keep the rents, income and profits from the Premises as they become due. Mortgagor agrees to use such rents, issues and profits in payment of principal and interest becoming due on this Mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against the Premises, but such right of Mortgagor may be revoked by Mortgagee upon any default under the terms, covenants or conditions of this Mortgage or the Note secured hereby.

(c) With respect to any lease referred to above or which at any time is covered by any such agreement or any such assignment of lessor's interest in such lease, Mortgagor will fulfill or perform each and every condition and covenant of the same to be fulfilled or performed by the lessor thereunder, give prompt notice to Mortgagee of any notice of default by the lessor thereunder received by Mortgagor together with a complete copy of any such notice, and enforce, short of

termination thereof, the performance or observance of each and every covenant and condition thereof by the lessee thereunder to be performed or observed.

(d) If a default occurs under the Note or this Mortgage, Mortgagee, either in person or by agent (or by a receiver appointed by a court), may enter and take possession of the Premises. Upon such entry, Mortgagee may operate and manage the Premises, and may (1) make, cancel, enforce or modify leases; (2) obtain and eject tenants; (3) set or modify rents; (4) apply any amounts collected, less costs and expenses of operation and collection, to any indebtedness secured by this Mortgage and in such order as Mortgagee may determine; (5) pay reasonable commissions for the collection of rents, (6) make such repairs and improvements on and to the Premises to make and keep them rentable to the best advantage, and (7) take any other action as Mortgagee deems reasonable. Mortgagee may advance monies to the receiver for such purposes and any monies expended or advanced by Mortgagee or the receiver shall be repaid out of the rents collected. Mortgagee or any receiver while in possession of the Premises shall only be liable to account for the rents actually received, and, if the expenses of Mortgagee or any receiver in managing the Premises shall exceed the amount of the rents actually received, the deficit shall be added to the principal indebtedness and its repayment secured by this Mortgage.

(e) Except for the application of such payments, Mortgagee will not be liable to any person for the collection or noncollection of any rents, income, issues or profits, nor for the failure to assert or enforce any of the foregoing rights previously held by Mortgagor. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to receive and collect all rent, additional rent and other sums due under the terms of each lease (as set forth in this Article 9) and to direct any tenant, by written notice or otherwise, to forward such rent, additional rent or other sums by mail or in person to Mortgagee. Any action taken by Mortgagee in accordance with this section will not cure or waive any default by Mortgagor hereunder or under the Note, be deemed a waiver of any notice of default, delivered by or on behalf of Mortgagee hereunder nor invalidate any act done or taken by Mortgagee following the delivery of a default notice.

(f) Mortgagor shall have no right or power, as against Mortgagee without its consent, which consent will not be unreasonably withheld, conditioned or delayed, to cancel, abridge or otherwise materially modify the leases or subleases of the Premises or any of the terms, provisions or covenants thereof, and Mortgagor shall not do so without such consent.

(g) Upon notice and demand, Mortgagor will, from time to time, execute, acknowledge and deliver or cause to be executed, acknowledged and delivered to Mortgagee, in form satisfactory to Mortgagee, one or more separate assignments (confirmatory of the general assignment provided in this section) of the lessor's interest in any lease or sublease now or hereafter affecting the whole or any part of the Premises, restricting Mortgagor's right or power, as against Mortgagee, without Mortgagee's consent, to cancel, abridge or otherwise modify, or accept prepayments of installments of rent to become due under, any lease or sublease hereafter in existence, which is of the character as aforesaid. Mortgagor shall pay to Mortgagee on demand any expenses reasonably incurred by Mortgagee in connection with the preparation and recording of any such assignment or agreement. The provisions of this section and such separate agreement shall be cumulative and shall be construed together; however, in the event of any conflict between

Case 1-23-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

the provisions of such separate agreement and those contained in this section, the provisions contained in the separate agreement shall control and be binding.

10. Injury to Property.    Mortgagor agrees that all causes of action which Mortgagor has or may have for damages or injury to the Premises or in connection with the transaction financed in whole or in part by the funds evidenced by the Note, are, at Mortgagee's option, assigned to Mortgagee. The term "causes of action" refers to a legal right which may be the basis of a lawsuit, and includes, among other things, claims arising in tort, by contract or fraud or concealment of material fact. The proceeds from any recovery will be paid to Mortgagee who, after deducting all of its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Mortgage or to any deficiency under this Mortgage or may release any money so received by it, at Mortgagee's option, as Mortgagee may elect. Mortgagee may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement. Mortgagor agrees to execute any further assignments and other instruments as may be necessary to effectuate this section, as Mortgagee may request. Mortgagor shall pay to Mortgagee on demand any expenses incurred by Mortgagee in connection with the preparation and recording of any such assignment or agreement.

11. Compliance with Environmental Laws.    Mortgagor's obligations with respect to all environmental matters shall be governed by that certain Environmental Indemnity dated the date hereof between Mortgagor and Guarantor, collectively as Indemnitor, and Mortgagee, as Indemnitee.

12. Statements and Notices.

(a) Mortgagor, within ten (10) days after request is made in person or within fifteen (15) days after request is made by mail, shall furnish to Mortgagee, without charge, a written statement, duly acknowledged, which sets forth (1) the total amount currently owed under this Mortgage, the Note and any other note secured by this Mortgage, and (2) whether any counterclaim, deduction, offset or defense exists against the amounts owed under the Note, this Mortgage or any other note secured by this Mortgage. As used herein, the term "duly acknowledged" shall mean signed before a notary public or other authorized official.

(b) Mortgagor shall do, execute, acknowledge and deliver, at Mortgagor's sole cost and expense, any further acts, deeds, conveyances, mortgages, assignments, estoppel certificates, notices of assignment, transfers and assurances as Mortgagee may reasonably require, from time to time, in order to better assure, convey, grant, assign, transfer and confirm unto Mortgagee, the rights now or hereafter intended to be granted to Mortgagee under this Mortgage, any other instrument executed in connection with this Mortgage or any other instrument under which Mortgagor may be or may hereafter become bound to convey, mortgage or assign to Mortgagee for carrying out the intention of facilitating the performance of the terms of this Mortgage. Mortgagor hereby appoints Mortgagee its true and lawful attorney-in-fact to execute, acknowledge and deliver for and in the name of Mortgagor any and all of the instruments mentioned in this section and this power, being coupled with an interest, shall be irrevocable as long as any part of the Indebtedness secured hereby remains unpaid.

13. <u>Financial Statements and Records</u>.        Mortgagor shall keep adequate books and records of account in accordance with generally accepted accounting practices consistently applied. Mortgagor shall deliver or cause to be delivered to Mortgagee during the entire term of the Indebtedness:

(a) Annual financial information as required by Section (14) hereof;

(b) Any other financial statement, report or other information Mortgagee may reasonably require from time to time regarding Mortgagor, the Premises and any guarantor of the Indebtedness. Mortgagor authorizes Mortgagee, at any time, prior to payment in full of the Indebtedness, or within one year following foreclosure of the Premises, to obtain any information that Mortgagee may reasonably require, including credit information from other sources (such as credit reporting agencies), concerning Mortgagor, the Premises, and any guarantor of the Indebtedness. In addition, Mortgagor shall keep and maintain at all times at the Premises, or such other place as Mortgagee may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Premises and copies of all written contracts, leases, and other documents which affect the Premises. Such books, records, contracts, lease and other documents shall be subject to examination, inspection and copying on reasonable notice at any reasonable time by Mortgagee;

(c) All books, records, accounts and financial statements required hereunder shall be accurate and complete in all material respect, shall represent fairly the financial position of the Mortgagor and/or the operation of the Premises and, unless waived by Mortgagee, shall be prepared in accordance with generally accepted accounting principles.

14. <u>Financial Information</u>.

(a) Mortgagor shall provide to Mortgagee (a) within sixty (60) days after the end of each calendar year during the term of this Indebtedness, draft financial statements of Mortgagor for the calendar year just ended and (b) within ninety (90) days after the end of each calendar year during the term of this Indebtedness, final audited financial statements for the calendar year then ended. The financial information provided to Mortgagee pursuant to this Section is sometimes hereinafter referred to as the "**Financial Information**." Mortgagee, at Mortgagor's reasonable cost and expense and upon reasonable prior notice, shall have the right, within one hundred fifty (150) calendar days after the end of each calendar or fiscal year, as applicable, during the term of the Indebtedness, by its accountants or representatives, to audit the information set forth in the Financial Information provided by Mortgagor, and in connection with such audits, to examine Mortgagor's records with respect thereto (including supporting data and sales and excise tax returns) subject to any prohibitions or limitations on disclosure of any such data under applicable law or regulation. Mortgagor's obligation under this Section to provide Mortgagor's financial information and to provide the financial information for the facility to Mortgagee shall be deemed a non-monetary obligation for purposes of this Mortgage.

15. <u>Further Encumbrances; Conveyance of Premises</u>.

(a) Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Premises so as to ensure that, should Mortgagor default in the repayment of the Note,

Mortgagor shall not, except for this Mortgage and other mortgages assigned to and held of record by Mortgagee, further encumber the Premises or any part thereof for debt without the prior written consent of Mortgagee.

(b) Mortgagor shall not, without the prior written consent of Mortgagee, which may be granted or withheld at Mortgagee's sole discretion, sell, transfer or convey the Premises, or any part thereof, or permit the Premises or any part thereof to be sold, transferred or conveyed, or pledge the Premises or any part thereof, unless the Indebtedness is paid in full at the time of such transaction. A sale, transfer or conveyance within the meaning of this section shall be deemed to include (1) an installment sales agreement wherein Mortgagor agrees to sell the Premises or any part thereof for a price to be paid in installments; (2) an agreement by Mortgagor leasing all or a substantial part of the Premises, or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any leases or any rents; (3) the voluntary or involuntary sale, conveyance or transfer of any of Mortgagor's membership interests (or the membership/ownership interests of any limited liability company or other entity that is a member, directly or indirectly, of Borrower), or the creation or issuance of new membership interests by which any of the Mortgagor's membership interests shall be vested in a person or persons who are not members on the date hereof; or (4) any change in the legal or equitable ownership of the Premises or any portion thereof, whether or not of record.  Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the debt secured hereby immediately due and payable upon Mortgagor's sale, transfer, conveyance or further encumbrance of the Premises without Mortgagee's consent. Except as otherwise provided herein, this provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Premises or any portion thereof regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, transfer, conveyance or further encumbrance of the Premises or any portion thereof.

16. Corporate Stamp Taxes.  In the event that corporate stamp taxes should be required upon the Note, Mortgagor agrees that it will immediately remit to Mortgagee the amount of the stamp taxes held to be so due. In the event Mortgagor fails to make such payment within five (5) days after written notice thereof, Mortgagee is authorized to purchase the necessary stamps and add the cost of same to the next payment due hereunder. Such payment shall be deemed an indebtedness secured by this Mortgage and shall be collectible in like manner as the principal indebtedness secured by this Mortgage.

17. Condemnation.    In the event of a condemnation, or taking in lieu thereof, by purchase or otherwise, of all or a material part of any of the Premises by any governmental authority or agency having jurisdiction, then the entire unpaid indebtedness including any additional monies advanced hereunder shall, at the option of Mortgagee, become immediately due and payable. The condemnation, or a taking in lieu thereof, by purchase or otherwise, of the whole or any part of any of the Premises, shall not reduce the interest provided to be paid on the indebtedness, notwithstanding any statutory provisions to the contrary. The application of any award from such Taking towards the payment of the Indebtedness shall not trigger any additional interest charges or prepayment premiums.

18. Casualty.  Mortgagor will give Mortgagee prompt notice of any substantial damage or destruction of the improvements on the Premises or to any Equipment or other personal property

with respect to the Premises and in case of loss covered by policies of insurance, Mortgagee is hereby authorized to make proof of loss if not promptly made by Mortgagor. Any expenses incurred by Mortgagee in the collection of insurance proceeds, together with interest thereon from the date of such expense at the rate provided under the Note, shall be added to and become a part of the indebtedness secured hereby and shall be reimbursed by Mortgagor to Mortgagee immediately upon demand. Pursuant to the terms and conditions set forth in Section 5(f) hereof, such net proceeds shall be applied by Mortgagee, upon or in reduction of the Indebtedness or to the cost of rebuilding or restoration of the improvements on the mortgaged property so damaged. Should Mortgagor decide to rebuild or repair the improvements on such of the Premises, then the repair, restoration, replacement or rebuilding of the improvements on the Premises shall be to a condition of at least equal value as prior to such damage or destruction.

19. Property Management.    In the event that Mortgagee determines that the Premises is not being managed in accordance with generally accepted management practices for properties similar to the Premises, Mortgagee shall deliver written notice thereof to Mortgagor, which notice shall specify with particularity the grounds for Mortgagee's determination. If Mortgagee determines that the conditions specified in Mortgagee's notice are not remedied to Mortgagee's satisfaction by Mortgagor within thirty (30) days from receipt of such notice or that Mortgagor has failed to diligently undertake correcting such conditions within such thirty (30) day period, Mortgagor shall, at Mortgagee's direction, terminate any existing management agreement for the Premises and enter into a property management agreement acceptable to Mortgagee with a management company acceptable to Mortgagee.

20. Further Acts.    Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage and Security Instrument or for filing, registering or recording this Mortgage and Security Instrument, or for complying with all applicable laws. Mortgagor, on reasonable demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Premises. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest, for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section C(20).

## D.    EVENTS OF DEFAULT.

1. Events of Default. Each of the following events will constitute an "**Event of Default**" under this Mortgage:

(a) Mortgagor fails to pay any amount due to Mortgagee under the Note or under this Mortgage when due;

(b) Mortgagor fails to pay any Tax, water rate, sewer rate or assessment prior to delinquency (an assessment which has been made payable in installments at the application of Mortgagor or lessee of the Premises, or portion thereof, shall nevertheless, for the purposes hereof, be deemed due and payable in its entirety on the day the first installment becomes due or payable or becomes a lien against the Premises) or fails to furnish to Mortgagee, within ten (10) days after request therefor is made, evidence that all such Taxes, water rates, sewer rates and assessments are or have been timely paid prior to delinquency;

(c) Mortgagor fails to keep, observe or perform any other promise, condition or agreement contained in this Mortgage or the Note, or any other documents described herein or therein or delivered in connection herewith or therewith, and such failure is not remedied within fifteen (15) days after written notice to Mortgagor thereof, provided, however, that if such failure is not capable of being cured or remedied within said fifteen (15) day period, then if Mortgagor fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion within thirty (30) days after written notice thereof;

(d) There is a material misstatement in any certificate and/or certification delivered in connection with the Note or this Mortgage, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of the Mortgagor in connection with the Indebtedness and secured by this Mortgage shall be materially misleading, untrue or incorrect;

(e) There is any actual or threatened waste, alteration, removal or demolition of any building or other improvement on the Premises, or any part thereof, without the prior written consent of Mortgagee;

(f) Mortgagor shall abandon the Premises or any part thereof for more than thirty (30) consecutive days;

(g) Mortgagor changes or permits to be changed the character or use of the Premises or Mortgagor uses or permits the Premises to be used for any unlawful purpose or any purpose by which the risk of fire or other hazard is increased, unless Mortgagee gives its prior written consent to such changed or unauthorized use;

(h) Mortgagor sells, transfers, assigns, conveys, alienates and/or encumbers the Premises, or any part thereof, or any interest therein, or any rents, issues or profits arising from the Premises, without Mortgagee's prior written consent;

(i) Mortgagor receives or collects rent or a security deposit from any tenant of all or any part of the Premises, or enters into a lease covering all or a portion of the Premises;

(j) Mortgagor fails to duly account to Mortgagee's reasonable satisfaction at such time or times as Mortgagee may reasonably require for any of the security or proceeds thereof coming into the control of Mortgagor;

(k) Mortgagor fails to comply, within thirty (30) days after obtaining knowledge thereof, with any requirement, order or notice of violation of a law or ordinance relating to the Premises issued by any governmental authority claiming jurisdiction over the Premises;

(l) Any action or proceeding is commenced by any governmental authority with respect to curing violations or maintenance of the Premises, which is not dismissed within thirty (30) days thereafter;

(m) Mortgagor fails to assign and deliver to Mortgagee, within ten (10) days after notice and demand is made to the extent same can be assigned and delivered, the policies insuring the buildings against loss by fire, or fails to timely reimburse Mortgagee for premiums paid on such insurance to the extent paid by Mortgagee;

(n) Mortgagor fails, within thirty (30) days after request therefor is made, to furnish to Mortgagee a statement of the amount due on this Mortgage and whether any offsets or defenses exist against the mortgage debt;

(o) Any fixture, chattel or article of personal property covered by this Mortgage is wholly or partially removed, demolished or destroyed, unless (1) the same are promptly replaced by similar fixtures, chattels or articles of personal property of a quality at least equal to the item or article removed, demolished or destroyed, (2) Mortgagor is the sole owner of the replacement property and (3) such replacement property is free from any lien, claim, chattel mortgage or other encumbrance and free from any reservation of title thereto;

(p) If Mortgagor fails to pay any mortgage recording tax assessed on this Mortgage;

(q) A receiver, liquidator or trustee shall be appointed for Mortgagor or for any of its property, an assignment shall be made for the benefit of creditors, Mortgagor shall be adjudicated a bankrupt or insolvent, or any petition for bankruptcy, reorganization or arrangement pursuant to the Federal Bankruptcy Code, or any similar federal or state statute, shall be filed by or against Mortgagor, unless such appointment, assignment, adjudication or petition was involuntary, in which event only if the same is not discharged, stayed or dismissed within thirty (30) days;

(r) A final non-appealable judgment (or, if the judgment was not appealed, a final judgment for which the time to appeal has expired) for the payment of money shall be rendered against Mortgagor and Mortgagor shall not discharge the same or cause it to be discharged within thirty (30) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered within the applicable appeal period, or shall not thereafter secure a stay of execution pending such appeal;

(s) Mortgagor shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with the intent to hinder, delay or defraud Mortgagee of any of its property and/or assets which may be fraudulent under any federal or state

bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if Mortgagor shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if the Mortgagor shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within sixty (60) days from the date of entry thereof;

(t) Any of the events enumerated in this Section shall happen to any Guarantor or any of its property, and such event or occurrence is not remedied or cured within sixty (60) days after written notice thereof;

(u) Any Guarantor defaults under or attempts to withdraw, cancel or disclaim liability under any guaranty or guaranties given to Mortgagee. Notwithstanding anything to the contrary contained herein or in any of the Loan Documents, the death of the Guarantor shall not constitute an Event of Default under this Note, the Mortgage or any Other Loan Document;

(v) Mortgagor or any Guarantor defaults under any other note, instrument, agreement, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Mortgagor to Mortgagee, and such event or occurrence is not remedied or cured within thirty (30) days after written notice thereof;

(w) Any of the membership interests of Borrower are assigned or transferred without the express consent of Mortgagor;

(x) Mortgagor fails to keep, observe or perform any other promise, condition or agreement contained that certain Agreement Regarding Condominium Regime entered into between Mortgagee, as lender and Mortgage, as borrower;

(y) Failure to obtain a Temporary Certificate of Occupancy (TCO) from the NYC Department of Buildings on or before August 20, 2018 for (i) the 35 residential units comprising approximately 31,027 net square feet with approximately 5,341 net square feet of outdoor balcony space, (ii) 3 ground floor commercial units comprising approximately 5,617 net square feet and (iii) 4 community facility units comprising approximately 9,653 net square feet;

(z) Mortgagor fails to obtain a Temporary Certificate of Occupancy within six (6) months from the date hereof; or

(aa) Any Event of Default under the Note or any Other Loan Document.

E. **REMEDIES OF MORTGAGEE.** Upon the occurrence of an Event of Default, Mortgagee possesses certain rights and remedies, among which are the following:

1. Failure of Mortgagor to Comply with this Mortgage. Upon the occurrence of an Event of Default, Mortgagee may (a) take whatever action Mortgagee deems necessary to protect the security of this Mortgage, including enter upon the Premises for such purposes; (b) pay, purchase, contest or compromise any encumbrance, charge or lien which Mortgagee deems to be superior to this Mortgage and (c) perform such act or pay such charge on behalf of Mortgagor. Mortgagee has no obligation to take any such actions and, if it chooses to take action, may do so

Case 1:23-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

without notice or demand upon Mortgagor and without releasing Mortgagor from any obligation under this Mortgage. If Mortgagee takes any such action, Mortgagor agrees to repay, immediately upon demand, any amounts expended by Mortgagee plus interest at the rate set forth in the Note, which amounts plus interest shall be secured by this Mortgage.

2. <u>Mortgagee's Right to the Appointment of a Receiver</u>.

(a) If Mortgagee initiates an action to foreclose on this Mortgage or in the event of any actual or threatened waste to any part of the Premises, Mortgagee will be entitled to have the court appoint a receiver. The receiver may be appointed without Mortgagee giving notice to Mortgagor thereof and without regard to the value of the Premises as security for the indebtedness secured hereby, or the solvency or insolvency of any person then liable for the payment of the indebtedness.

(b) Following an Event of Default, a receiver for the Premises may be appointed upon the application of Mortgagee, which application Mortgagor hereby agrees not to contest. Mortgagee or any receiver of the Premises may at any time or from time to time, in its or his/her discretion, make advances to effect performance of such covenant on behalf of Mortgagor; and all monies so advanced by Mortgagee or such receiver, together with interest thereon, shall be deemed a part of the Indebtedness secured by the lien of this Mortgage.

3. <u>Mortgagee's Right to the Appointment of a Managing Agent</u>. If, at any time following an Event of Default, the management or maintenance of the Premises shall be determined by Mortgagee to be unsatisfactory, Mortgagor shall employ, for the duration of such default, as managing agent of the Premises such person or firm as, from time to time, shall be approved by Mortgagee, in its reasonable discretion.

4. <u>Acceleration Clause: Right of Mortgagee to Declare All Sums Due</u>. Upon the occurrence of any Event of Default, Mortgagee will have the right, at its option, to declare any indebtedness and obligations secured by this Mortgage, irrespective of the maturity date specified in the Note or any note or agreement evidencing the same, due and payable immediately upon such declaration.

5. <u>Payment of Rent</u>.

(a) Mortgagor will, following an Event of Default, pay monthly in advance to Mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be used and occupied by Mortgagor, and upon default in any such payment will vacate and surrender possession of the Premises to Mortgagee or to such receiver. If Mortgagor fails to so surrender possession of the Premises, Mortgagor may be evicted by summary dispossess proceedings, and Mortgagee reserves the remedy of ejectment.

(b) In the event there is a foreclosure sale hereunder and at the time of such sale, Mortgagor or Mortgagor's representatives, successors or assigns, or any other persons claiming any interest in the Premises by, through or under Mortgagor, are occupying or using the Premises, or any part thereof, then, to the extent not prohibited by applicable law, each and all shall, at the option of Mortgagee or the purchaser at such sale, as the case may be, immediately vacate the portion of the

Premises occupied by Mortgagor or become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day-to-day, terminable at the will of either landlord or tenant, at a reasonable rental per day based upon the value of the Premises occupied or used, such rental to be due daily to the purchaser. Further, to the extent permitted by applicable law, in the event the tenant fails to surrender possession of the Premises upon the termination of such tenancy, the purchaser shall be entitled to institute and maintain an action for unlawful detainer of the Premises in the appropriate court of the county in which the Premises is located.

  6. <u>Right to Demand Payment upon a Change in Tax Laws</u>. In the event of the passage of any laws which (a) deduct from the value of real property for the purposes of taxation any lien thereon (b) change in any way the laws for the taxation of mortgages for state or local purposes or the manner of the collection of any such taxes (such as the postponement of the payment of all or any part or the real or personal property taxes) so as to affect this Mortgage, (c) render it illegal for Mortgagor to pay any taxes referred to in Section (b) above or cause the payment of any taxes by Mortgagor to result in the violation of the usury laws or other laws of general application affecting the rights of Mortgagors in the State in which the Premises are located, then Mortgagee shall have the right, at Mortgagee's sole option, to declare the indebtedness secured by this Mortgage to be due on a date to be specified by Mortgagee upon not less than thirty (30) days' prior written notice to Mortgagor. This option to require repayment will be ineffective if Mortgagor is permitted by law to pay the taxes in addition to all of the payments required by this Mortgage and, prior to the due date of the taxes, Mortgagor does pay such taxes and agrees to pay any such taxes when assessed against the Premises.

  7. <u>No Waiver by Mortgagee</u>.

   (a) No waiver by Mortgagee of any right under this Mortgage will be effective unless the waiver is in writing signed by Mortgagee. The waiver by Mortgagee of any right granted under this Mortgage relating to a single transaction or occurrence will not be deemed to be a waiver as to any future transaction or occurrence.

   (b) If Mortgagee: (a) accepts the payment of any sum secured by this Mortgage after its due date; (b) makes any payment for Mortgagor; (c) performs any act for Mortgagor that Mortgagor was obligated to perform, but failed to perform; or (d) adds any payment made by Mortgagee to the Indebtedness secured by this Mortgage, Mortgagee does not waive its right to require, in the future, prompt payment when due of all sums secured by this Mortgage or prompt performance of all other obligations of Mortgagor hereunder nor shall Mortgagee be deemed to have waived its right to declare a default for the failure of Mortgagor to make such payment or perform such obligation.

   (c) The waiver of or acquiescence in by Mortgagee of any default by Mortgagor or the failure of Mortgagee to insist upon strict performance by Mortgagor of any terms, provisions, conditions, covenants or agreements in this Mortgage shall not constitute a waiver of any subsequent or other default of Mortgagor.

   (d) Neither Mortgagor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by the Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of

Mortgagor or of any other person so obligated to take action to foreclose the Mortgage or otherwise enforce any of the provisions of the Mortgage or any obligations secured by the Mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security hereunder, extending the time of payment or modifying the terms of the Note or Mortgage without first having obtained the consent of Mortgagor or such other person, and in the latter event, Mortgagor and all such other persons shall continue to be liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by Mortgagee. Mortgagee may, in its sole discretion, release the obligation of anyone at any time liable for any of the indebtedness secured by the Mortgage or any part of the security held for indebtedness and may extend the time of payment or otherwise modify the terms of the Note and/or the Mortgage without, as to the security or the remainder thereof, impairing or affecting the lien of the Mortgage as security for the payment of the indebtedness as it may be so extended or modified; and that Mortgagee may resort for the payment of the indebtedness secured hereby to any other security held by Mortgagee in such order and manner as Mortgagee may elect.

8. **Foreclosure by Mortgagee; Other Remedies.**

(a) **Foreclosure-Power of Sale.** In all events subject to the requirements of applicable law, Mortgagee may institute a proceeding or proceedings, judicial, or non-judicial, by advertisement or otherwise, for the complete or partial foreclosure of this Mortgage or any Security Agreement or the complete or partial sale of the Premises under power of sale or under any applicable provision of law. Mortgagee may sell the Premises, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as it may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Premises, this Mortgage shall continue as a lien and security interest on the remaining portion of the Premises.

(i) Subject to the requirements of applicable law and except as otherwise provided herein, the following provisions shall apply to any sale or sales of all or any portion of the Premises under or by virtue of Subsection 8(a) above, whether made under the power of sale herein granted or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale:

(1) Mortgagee may conduct any number of sales from time to time. The power of sale set forth above shall not be exhausted by any one or more such sales as to any part of the Premises which shall not have been sold, nor by any sale which is not completed or is defective in Mortgagee's opinion, until the Debt shall have been paid in full.

(2) Any sale may be postponed or adjourned by public announcement at the time and place appointed for such sale or for such postponed or adjourned sale without further notice.

(3) After each sale, Mortgagee or an officer of any court empowered to do so shall execute and deliver to the purchaser or purchasers at such sale a good and sufficient instrument or instruments granting, conveying, assigning and transferring all right, title and interest

of Mortgagor in and to the property and rights sold and shall receive the proceeds of said sale or sales and apply the same as specified in the Note. Mortgagee is hereby appointed the true and lawful attorney-in-fact of Mortgagor, which appointment is irrevocable and shall be deemed to be coupled with an interest, in Mortgagor's name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the property and rights so sold, Mortgagor hereby ratifying and confirming all that said attorney shall lawfully do by virtue thereof. Nevertheless, Mortgagor, if requested by Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to Mortgagee or such purchaser or purchasers all such instruments as may be advisable, in Mortgagee's judgment, for the purposes as may be designated in such request.

(4) Any and all statements of fact or other recitals made in any of the instruments referred to herein given by Mortgagee shall be taken as conclusive and binding against all persons as to evidence of the truth of the facts so stated and recited.

(5) Any such sale or sales shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and any and all persons claiming or who may claim the same, or any part thereof or any interest therein, by, through or under Mortgagor to the fullest extent permitted by applicable law.

(6) Upon any such sale or sales, Mortgagee may bid for and acquire the Premises and, in lieu of paying cash therefor, may make settlement for the purchase price by crediting against the Indebtedness the amount of the bid made therefor, after deducting therefrom the expenses of the sale, the cost of any enforcement proceeding hereunder, and any other sums which Mortgagee is authorized to deduct under the terms hereof, to the extent necessary to satisfy such bid.

(7) Upon any such sale, it shall not be necessary for Mortgagee or any public officer acting under execution or order of court to have present or constructively in its possession any of the Premises.

(8) The Premises or any part of the Premises that is affected by this Mortgage may be sold either as one unit or in separate parcels, at Mortgagee's option. In the event of sale, by foreclosure or otherwise, of less than all of the Premises, this Mortgage shall continue as a lien on the remaining portion of the Premises.

(b) Other Rights.    In the event of the foreclosure of this Mortgage, a judgment obtained in such foreclosure action shall, in addition to all other rights and remedies of Mortgagee, be enforceable against the interest of Mortgagor in the premiums or proceeds of any insurance policies covering or related to the Premises, any awards payable in connection with any condemnation of the premises or any part thereof, prepaid taxes, water rates, sewer rents, real estate tax refunds, rents receivable from tenant and occupants of the premises or any part thereof, any other rights, privileges, licenses, franchises, claims, causes of action or other interests, sums, or receivables appurtenant to the premises. In addition, Mortgagee (i) may surrender the insurance policies maintained pursuant to this Mortgage or any part thereof, and upon receipt shall apply the unearned premiums as a credit on the Indebtedness, and, in connection therewith, Mortgagor

Case 1-22-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

hereby appoints Mortgagee as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Mortgagor to collect such premiums; and (ii) may apply any funds held in escrow pursuant to the terms of this Mortgage or any other Loan Documents and any other funds held by Mortgagee toward payment of the Indebtedness; and (iii) shall have and may exercise any and all other rights and remedies which Mortgagee may have at law or in equity, or by virtue of any of the Loan Documents, or otherwise.

(c) Title Search.     In the event of any default herein, the holder of this Mortgage may, at the holder's option, without notice, make or cause to be made a foreclosure title search in preparation of the institution of a foreclosure action and take such steps as may be necessary and desirable for that purpose, and the expense so incurred for such purpose or purposes shall become part of the indebtedness secured by this Mortgage; and whether such foreclosure is actually instituted and carried to judgment, or is not instituted at all, or after having been instituted is discontinued, the expense so incurred in connection therewith may be added by the holder of this Mortgage to the indebtedness secured by this Mortgage, and shall, at the option of the holder, become due and payable forthwith.

(d) In the event of a foreclosure of this Mortgage, Mortgagor covenants and agrees to pay any tax due pursuant to any applicable law, order or statute. In connection therewith, Mortgagor does hereby irrevocably constitute and appoint Mortgagee the true and lawful attorney of Mortgagor, coupled with an interest, to execute and deliver on behalf of Mortgagor all appropriate forms and schedules required in connection with a "transfer of real property" as contemplated by any applicable legal requirements with respect to any portion of the Premises subject to such legal requirement and to take all other steps or actions required in connection therewith. Mortgagor further covenants and agrees to reimburse Mortgagee for any cost or expense incurred by Mortgagee as a result of Mortgagor's default under this section together with interest thereon at the Default Rate.

(e) Additional Remedies.     Following an Event of Default, Mortgagee shall have the right, in addition to its right to accelerate the Indebtedness secured hereby and/or to institute a foreclosure proceeding, to (1) institute one or more actions, suits or proceedings in equity for the specific performance of any covenant, condition or agreement contained herein or in the Note; (2) to the fullest extent permitted by law, recover a deficiency judgment on the Note after any proceedings for the enforcement of this Mortgage; (3) apply for the appointment of a trustee, receiver, liquidator or conservator of the Premises, without notice, without regard for the adequacy of the security for the Indebtedness secured hereby; or (4) pursue any and all other remedies as Mortgagee may have pursuant to this Mortgage, the Note, under applicable law and/or in equity.

9. Recovery of Additional Sums.     Mortgagee shall have the right, from time to time, to sue for any sums, whether interest, principal, damages for failure to pay principal or any installment thereof, taxes or any other sums required to be paid under the terms of this Mortgage, as the same shall become due, without regard to whether or not the principal sums secured by the Note and Mortgage shall be due and without prejudice to the right of Mortgagee to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

10. Mortgagee's Judicial Remedies. Mortgagee may proceed by suit or suits, at law or in equity, to enforce the payment of the Indebtedness to foreclose the liens and security interests of this Mortgage as against all or any part of the Premises, and to have all or any part of the Premises sold under the judgment or decree of a court of competent jurisdiction. This remedy shall be cumulative of any other non-judicial remedies available to Mortgagee under this Mortgage, the Note or the Other Loan Documents. To the fullest extent permitted by law, proceeding with a request or receiving a judgment for legal relief shall not be or be deemed to be an election of remedies or bar any available non-judicial remedy of Mortgagee.

11. Commercial Code Remedies. Mortgagee may exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of personal property or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the personal property, and (ii) request Mortgagor at its expense to assemble the personal property and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Any notice of sale, disposition or other intended action by Mortgagee with respect to the personal property sent to Mortgagor in accordance with the provisions hereof at least ten (10) business days prior to such action shall constitute commercially reasonable notice to Mortgagor.

12. Bankruptcy Acknowledgment. In the event the Premises or any portion thereof or any interest therein becomes property of any bankruptcy estate or subject to any state or federal insolvency proceeding, then Mortgagee shall immediately become entitled, in addition to all other relief to which Mortgagee may be entitled under this Mortgage, to obtain (i) an order from the Bankruptcy Court or other appropriate court granting immediate relief from the automatic stay pursuant to § 362 of the Bankruptcy Code so to permit Mortgagee to pursue its rights and remedies against Mortgagor as provided under this Mortgage and all other rights and remedies of Mortgagee at law and in equity under applicable state law, and (ii) an order from the Bankruptcy Court prohibiting Mortgagor's use of all "cash collateral" as defined under § 363 of the Bankruptcy Code. In connection with such Bankruptcy Court orders, Mortgagor shall not contend or allege in any pleading or petition filed in any court proceeding that Mortgagee does not have sufficient grounds for relief from the automatic stay. Any bankruptcy petition or other action taken by the Mortgagor to stay, condition, or inhibit Mortgagee from exercising its remedies are hereby admitted by Mortgagor to be in bad faith and Mortgagor further admits that Mortgagee would have just cause for relief from the automatic stay in order to take such actions authorized under state law.

13. Returned Check Fee. In the event that any payment is returned for any reason whatsoever, there shall be a charge of One Hundred Dollars ($100.00) per occurrence as an administrative charge to process the account.

14. Default Fee. Except for the payment of the indebtedness evidenced by the Note after acceleration, if any payment (or part thereof) provided for herein or in the Note shall be made when due, a late charge of six ($0.06) cents for each dollar so overdue shall become immediately due and payable to Mortgagee as liquidated damages for failure to make prompt payment and the same shall be secured by this Mortgage. Such charge shall be payable in any event no later than the due date of the next subsequent installment or at the option of the holder of this Mortgage, may

be deducted from any deposits held by the said mortgagee for the payment of real estate taxes, water rates, sewer rents and insurance premiums. Nothing herein is intended to or shall extend the due dates set forth for payments under this Mortgage. Such late fee may be charged on any subsequent late payments.

15. _Interest after Default_.     It is hereby mutually agreed that **TIME IS OF THE ESSENCE** regarding the repayment, accelerated payment or other payment of this Mortgage when due as hereinbefore stated and is furthermore of unique and specific importance and of financial necessity to Mortgagee. If all sums due or payable under the Mortgage or under any written extension, postponement or renewal thereof, is not paid when due, whether on the maturity date stated in the Note or earlier by reason of acceleration of the payment thereof, then, from and after the due date, Mortgagor shall pay and hereby agrees to pay to Mortgagee,  interest at the default rate set forth in the Note ("**Default Rate**") on the unpaid principal sum and any other Indebtedness due and owing for each and every month, or any fraction thereof, computed from said due date until the date of actual repayment (including any post-judgment period). Said interest shall become due and payable at the same time interest payments are due under this Mortgage and shall be secured by and collected hereunder. It is hereby understood that this provision does not constitute a consent or agreement on the part of Mortgagee, to extend or postpone the time of such payment beyond the present date of maturity.

16. _Remedies and Offsets_.

(a)  No remedy provided to Mortgagee pursuant to this Mortgage will be exclusive of any other remedy contained in this Mortgage or any other remedy which exists or may exist under any other documents or agreements relating to the indebtedness due under the Note, at law or in equity, and all such remedies will be cumulative. Every power or remedy given to Mortgagee may be exercised from time to time and as often as Mortgagee may wish, and Mortgagee may pursue inconsistent remedies if it so chooses. Mortgagee may, at its option, offset against any indebtedness that Mortgagee owes to Mortgagor the whole or any part of the indebtedness secured by this Mortgage. Mortgagor agrees that Mortgagee, without any obligation to do so and without affecting Mortgagor's obligations contained in this Mortgage, may apply all sums of money which Mortgagee may have in its possession or under its control towards the payment of any indebtedness secured by this Mortgage, including escrow or trust funds, if and to the extent permitted by law.

(b)  In order to assure the definiteness and certainty of the rights and obligations contained in this Mortgage, Mortgagor waives any and all rights of offset of claims against the Indebtedness secured by this Mortgage, against installments on the Indebtedness or against any other obligations secured by this Mortgage as they become due.

17. _Mortgagee's Costs and Expenses; Legal Fees_.

(a)  If any action or proceeding is commenced (including, without limitation, any action under any federal or state bankruptcy or insolvency law, or any similar law) by or against Mortgagee, including an action to foreclose this Mortgage or to enforce, declare or adjudicate any rights or obligations under this Mortgage or the Note affecting the Premises or the lien created hereby, or if any action or proceeding is commenced (except an action to foreclose this Mortgage or to collect the Indebtedness) to which action or proceeding Mortgagee is made a party,

Mortgagee may appear, defend, prosecute, retain counsel and take such action as Mortgagee shall deem advisable, and the costs thereof (including, without limitation, reasonable attorneys' fees and expenses and all applicable statutory costs, allowances and disbursements), together with interest thereon at the Applicable Interest Rate (or the Default Rate after and during the continuance of an Event of Default), shall be paid by Mortgagor to Mortgagee on demand. All of the aforementioned amounts plus interest thereon shall be a lien on the Premises, prior to any right, title or interest in or claim upon the Premises attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage.

(b) Mortgagor agrees to bear all reasonable expenses (including reasonable attorneys' fees for legal services of every kind including fees to foreclose this mortgage) of or incidental to the enforcement of any provisions hereof, or enforcement, compromise, or settlement of any other collateral pledged hereunder, and for the curing thereof, or defending or asserting the rights and claims of Mortgagee in respect thereof, by litigation or otherwise, and will pay to Mortgagee any such expenses reasonably incurred, and such expenses shall be deemed an indebtedness secured by this Mortgage and shall be collectible in like manner as the principal indebtedness secured by this Mortgage.

18.  **Post-Judgment Interest, Fees and Charges**.  After the entry of a judgment and/or a foreclosure judgment, Mortgagee shall have the right to continue to charge Mortgagor and to increase the amount of the judgment for post-judgment reasonable attorneys' fees and costs, post-judgment interest at the Default Rate provided for herein, real estate taxes, utilities, maintenance, security and other charges that may be incurred by Mortgagee.

F.  **INDEMNIFICATION.**

1.  General Indemnification.  Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (as such term is hereinafter defined) from and against any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, of whatever kind or nature (including but not limited to reasonable attorneys' fees and other costs of defense) (the "**Losses**") imposed upon or incurred by or asserted against any Indemnified Parties which directly arise out of or in any way are related to any one or more of the following, except to the extent any of the following are attributable to the gross negligence or willful misconduct of an Indemnified Party: (a) ownership of this Mortgage and Security Instrument, the Premises or any interest therein or receipt of any Rents; (b) any amendment to, or restructuring of, the Indebtedness, and the Note, this Mortgage, or any Other Loan Documents for the benefit of Mortgagor; (c) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the Other Loan Documents, whether or not suit is filed in connection with same, or in connection with Mortgagor and/or any member, partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (d) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any use, nonuse or condition in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (f) any failure on

the part of Mortgagor to perform or be in compliance with any of the terms of this Mortgage, the Note or any of the Other Loan Documents; (g) performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof; (h) any failure of the Premises to be in compliance with any applicable laws, rules and regulations; (j) the enforcement by any Indemnified Party of the provisions of this Section F; (k) any and all claims and demands whatsoever which may be asserted against Mortgagee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (l) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the loan evidenced by the Note and secured by this Mortgage; or (m) any misrepresentation made by Mortgagor in this Mortgage or any Other Security Document. Any amounts payable to Mortgagee by reason of the application of this Section F(1) shall become immediately due and payable and shall bear interest at the Applicable Interest Rate (or the Default Rate after and during the continuance of an Event of Default)from the date loss or damage is sustained by Mortgagee until paid. For purposes of this Section F, the term **"Indemnified Parties"** means Mortgagee and any person or entity who is or will have been involved in the origination of the loan evidenced by the Note, any person or entity who is or will have been involved in the servicing of the loan evidenced by the Note, any person or entity in whose name the encumbrance created by this Mortgage and Security Instrument is or will have been recorded, persons and entities who may hold or acquire or will have held a full or partial interest in the loan evidenced by the Note (including, but not limited to, Investors (as defined herein), as well as custodians, trustees and other fiduciaries who hold or have held a full or partial interest in the loan evidenced by the Note as well as the respective directors, officers, shareholders, partners, employees, agents, servants, representatives, contractors, subcontractors, affiliates, subsidiaries, participants, successors and assigns of any and all of the foregoing (including but not limited to any other person or entity who holds or acquires or will have held a participation or other full or partial interest in the loan evidenced by the Note or the Premises, during the term of the loan evidenced by the Note, and including, but not limited to, any successors by merger, consolidation or acquisition of all or a substantial portion of Mortgagee's assets and business). The above indemnification provisions shall not apply to any Losses first arising after Indebtedness has been paid in full or after the transfer of legal title and possession of the Premises by the Mortgagor to an unrelated third party.

2. <u>Mortgage and/or Intangible Tax</u>.    Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Mortgage, the Note or any of the Other Loan Documents, except for net income taxes and franchise taxes (imposed in lieu of net income taxes) imposed on an Indemnified Party as a result of a present or former nexus between the jurisdiction of the government or taxing authority imposing such tax and the Indemnified Party (excluding a connection arising solely from the Indemnified Party having executed, delivered, or performed its obligations or received a payment under, or enforced, this Mortgage, the Note and the Other Loan Documents) or any political subdivision or taxing authority thereof or therein.

3. <u>Environmental Indemnification</u>.    Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses and costs of any environmental remediation (whether or not performed

voluntarily), engineers' fees, environmental consultants' fees, and costs of investigation (including but not limited to sampling, testing, and analysis of soil, water, air, building materials and other materials and substances whether solid, liquid or gas) imposed upon or incurred by or asserted against any Indemnified Parties, and directly or indirectly arising out of or in any way relating to any one or more of the following (except to the extent the same relate solely to the release of Hazardous Substances to the Premises by anyone other than Mortgagor, its agents or employees following the foreclosure of this Security Instrument (or the delivery and acceptance of a deed in lieu of such foreclosure), the expiration of any right of redemption with respect thereto and the obtaining by the purchaser at such foreclosure sale or grantee under such deed of possession of the Premises): (a) any presence of any Hazardous Substances in, on, above, or under the Premises; (b) any past, present or threatened release of Hazardous Substances in, on, above, under or from the Premises; (c) any activity by Mortgagor, any person or entity affiliated with Mortgagor or any tenant or other user of the Premises in connection with any actual use, treatment, storage, holding, existence, disposition or other release, generation, production, manufacturing, processing, refining, control, management, abatement, removal, handling, at, under, on or above the Premises, or transfer or transportation to or from the Premises of any Hazardous Substances; (d) any activity by Mortgagor, any person or entity affiliated with Mortgagor or any tenant or other user of the Premises in connection with any Remediation of any Hazardous Substances at any time located in, under, on or above the Premises, whether or not such Remediation is voluntary or pursuant to court or administrative order, including but not limited to any removal, remedial or corrective action; (e) any past, present or threatened non-compliance or violations of any Environmental Laws (or permits issued pursuant to any Environmental Law) in connection with the Premises or operations thereon, including but not limited to any failure by Mortgagor, any person or entity affiliated with Mortgagor or any tenant or other user of the Premises to comply with any order of any governmental authority in connection with any Environmental Laws; (f) the imposition, recording or filing or the threatened imposition, recording or filing of any Environmental Lien encumbering the Premises; (g) any administrative processes or proceedings or judicial proceedings in any way connected with any matter addressed in Section C(11) and this Section F; (h) any past, present or threatened injury to, destruction of or loss of natural resources in any way connected with the Premises, including but not limited to costs to investigate and assess such injury, destruction or loss; (i) any acts of Mortgagor or other users of the Premises in arranging for disposal or treatment, or arranging with a transporter for transport for disposal or treatment, of Hazardous Substances owned or possessed by such Mortgagor or other users, at any facility or incineration vessel owned or operated by another person or entity and containing such or similar Hazardous Materials; (j) any acts of Mortgagor or other users of the Premises, in accepting any Hazardous Substances for transport to disposal or treatment facilities, incineration vessels or sites selected by Mortgagor or such other users, from which there is a release, or a threatened release of any Hazardous Substance which causes the incurrence of costs for Remediation; (k) any personal injury, wrongful death, or property damage arising under any statutory or common law or tort law theory, including but not limited to damages assessed for the maintenance of a private or public nuisance or for the conducting of an abnormally dangerous activity on or adjacent to the Premises; and (l) any material misrepresentation or inaccuracy in any representation or warranty or material breach or failure to perform any covenants or other obligations pursuant to Section C(11).

4. <u>Duty to Defend; Attorneys' Fees and Other Fees and Expenses</u>. Upon written request by any Indemnified Party, Mortgagor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals

selected by Mortgagor and approved by the Indemnified Parties, in their reasonable discretion, in which case Mortgagor shall pay for the reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith. Notwithstanding the foregoing, any Indemnified Parties may, in their sole and absolute discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties.

## G.   MISCELLANEOUS.

1.   Compliance with Usury Laws.    It is the intention of the parties hereto that this Mortgage and the Note corresponding hereto be construed so as to give it legal effect, and specifically to comply with the usury laws applicable to the Indebtedness and all sums due under the Note and this Mortgage. Accordingly, it is agreed that, notwithstanding any provision to the contrary in the Note or this Mortgage or in any other document securing the payment of the sums due under the Note or this Mortgage, no such provision shall require the payment or permit the collection of interest or other sums in excess of the maximum amount permitted by law. If any excess interest or other sums under the Note, Mortgage or any other document, is determined by a court of competent jurisdiction to be in excess of the maximum amount permitted by law, then the provisions of this section shall govern and control, and neither Mortgagor nor any other party liable for the payment of such sums shall be obligated to pay the amount determined to be in excess of the maximum amount permitted by law. Any such excess interest or other excess sums that may have been collected shall be, at Mortgagee's option, either applied as a credit against the then unpaid principal, or refunded to Mortgagor. The effective rate of interest and other sums as charged under the Note or this Mortgage or in any other document securing the payment of the sums due under the Note or this Mortgage, shall be automatically subject to reduction to the maximum lawful rate permitted under the usury or other applicable laws.

2.   Litigation. Mortgagor agrees to defend this Mortgage in any action or proceeding which might affect the Premises, to the extent such action or proceeding affects the security of this Mortgage.  Mortgagor agrees to file and prosecute all necessary claims or actions to prevent or to recover for any damage to or destruction of the Premises. Mortgagee is hereby authorized, but is not obligated, to commence, appear in or defend any such action, whether brought by or against Mortgagee or Mortgagor, whether or not a lawsuit is filed, and may exercise and enforce any other right, remedy or power available or conferred by this Mortgage, whether or not a judgment is entered in any action or proceeding. Mortgagee may appear or intervene in any such action or proceeding and retain counsel for that purpose, take any action Mortgagee reasonably deems necessary, settle, compromise or pay any claim and expend and advance such monies as Mortgagee reasonably deems necessary. Whether or not Mortgagor so appears or defends, Mortgagor on demand shall pay all reasonable costs and expenses of Mortgagee, including costs of evidences of title and reasonable attorneys' fees, in any action or proceeding in which Mortgagee may appear as a party or witness. Mortgagor must reimburse Mortgagee for Mortgagee's expenses irrespective of whether the interest of Mortgagee in the Premises is directly questioned by such action. Lawsuits which might require reimbursement by Mortgagor include, but are not limited to, any action for condemnation or partition of the Premises and any lawsuit brought by Mortgagee to foreclose this Mortgage.

3. <u>Submission to Jurisdiction.</u>    The Mortgagor and each endorser agree that any action, suit or proceeding in respect of or arising out of this Mortgage may be initiated and prosecuted in the State or Federal courts, as the case may be, located in the county and state in which the Premises is located. The Mortgagor and each endorser consent to and submit to the exercise of jurisdiction over the subject matter, waive personal service of any and all process upon it and consent that all such service of process be made by registered mail directed to the Mortgagor or such endorser at its address set forth above or to any other address as may appear in the payee's records as the address of the maker or such endorser.

4. <u>Prepayment.</u>    Borrower may prepay the principal of the Note (in whole but not in part) only in strict compliance with the provisions of Section 9 of the Note.

5. <u>Performance at Borrower's Expense.</u>    Mortgagor acknowledges and confirms that Mortgagee shall impose certain reasonable administrative processing fees in connection with (a) the extension, renewal, modification, amendment and termination of its loans, (b) the release or substitution of collateral therefor, (c) obtaining certain consents, waivers and approvals with respect to the Premises, or (d) the review of any Lease or proposed Lease or the preparation or review of any subordination, non-disturbance agreement (the occurrence of any of the above shall be called an "Event"). Mortgagor further acknowledges and confirms that it shall be responsible for the payment of all costs of reappraisal of the Premises or any part thereof required by law, regulation, any governmental or quasi-governmental authority or, following an Event. Mortgagor hereby acknowledges and agrees to pay, immediately, with or without demand, all such reasonable fees (as the same may be increased or decreased from time to time), and any additional reasonable fees of a similar type or nature which may be imposed by Mortgagee from time to time, upon the occurrence of any Event or otherwise. Wherever it is provided for herein that Mortgagor pay any costs and expenses, such costs and expenses shall include, but not be limited to, all reasonable legal fees and disbursements of Mortgagee, whether retained firms, the reimbursement for the expenses of in-house staff or otherwise.

6. <u>Attorney's Fees for Enforcement.</u> (a) Mortgagor shall pay all reasonable legal fees incurred by Mortgagee in connection with (i) subject to the prior agreement of the parties, the preparation of the Note, this Mortgage and the Other Loan Documents and (ii) the items set forth in Section G(5) above, and (b) Mortgagor shall pay to Mortgagee on demand any and all expenses, including reasonable legal expenses and attorneys' fees, reasonably incurred or paid by Mortgagee in protecting its interest in the Premises or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Premises, whether or not any legal proceeding is commenced hereunder or thereunder and whether or not any default or Event of Default shall have occurred and is continuing, together with interest thereon at the Default Rate from the date paid or incurred by Mortgagee until such expenses are paid by Mortgagor.

7. <u>Governing Law.</u>    This Mortgage will be governed by and construed in accordance with the laws of the State of New York.

8. <u>Severability.</u>    If any section, clause or provision of this Mortgage or the Note or any other notes or obligations secured by this Mortgage is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such voidness, invalidity or unenforceability will not affect the remaining sections, clauses and provisions of this Mortgage or

the Note or any other notes or obligations secured by this Mortgage, which shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

9. <u>Release of Mortgage</u>.    When Mortgagor has paid to Mortgagee the entire Indebtedness secured by this Mortgage, Mortgagee will, at Mortgagor's option, either discharge or assign this Mortgage to Mortgagor.  Any instrument of assignment or satisfaction of this Mortgage which is requested at the time of payment of the balance of the principal of this Mortgage, with interest, if any, shall be in recordable form and otherwise reasonably acceptable to Mortgagor, drawn by Mortgagee's attorney at the reasonable expense of Mortgagor or other party requesting such instrument. Any such instrument of assignment shall be without covenant and shall recite that it is without recourse as against the assignor in any event whatsoever.  Mortgagee agrees to deliver the original Note with endorsement to the assignee in connection with such an assignment.

10. <u>Obligation of Mortgagor is Joint and Several</u>.    If more than one person is named in this Mortgage as "Mortgagor," each obligation of Mortgagor shall be the "joint and several" obligation of each person. This means that each and every person must keep and perform Mortgagor's promises and obligations, even though someone else fails to perform.

11. <u>Modification in Writing</u>.  This Mortgage cannot be changed or modified except in the manner stated in this Mortgage or by agreement in writing signed by Mortgagor and Mortgagee. Any agreement hereafter made modifying the terms of this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

12. <u>Time is of the Essence</u>.    **TIME IS OF THE ESSENCE** regarding the performance of all of Mortgagor's obligations under this Mortgage, the Note and all other loan documents. This means that Mortgagor must strictly comply with all time deadlines when performing or complying with the terms of this Mortgage and Mortgagor's obligations contained in this Mortgage.

13. <u>Inspection and Business Records</u>. Subject to the rights of tenants of the Premises, Mortgagee and/or its authorized representatives shall have the right to enter upon and inspect the Premises at any reasonable time.

14. <u>Notices Required Under this Mortgage</u>. All notices to be given pursuant to this Mortgage shall be in writing and sufficient if given by personal in-hand service, by reputable overnight delivery service, or by being mailed postage prepaid, by registered or certified mail, to such party's address first herein above set forth, along with a copy to such party's attorneys, as follows:  (a) Lender's attorney: Mavrides, Moyal, Packman & Sadkin, LLP, 276 Fifth Avenue, Suite 404, New York, New York 10001, Attention: Eric Sadkin, Esq. and (b) Borrower's attorney: Yu Law P.C., 199-20 32nd Avenue, Ground Floor, Flushing, New York 11358, Attention: Wing Y. Yu, Esq. Notices by registered or certified mail shall be considered delivered and become effective upon the earlier of receipt or three (3) days after mailing thereof.  Notices by personal hand delivery shall be considered delivered and become effective on the day delivered or refused. Notices by overnight delivery service shall be considered delivered and become effective on the next business day after being sent.  Notices may be given by a party's attorneys or agents with the same force and effect as though given by such party.

15. <u>Waiver of Trial by Jury</u>. Mortgagor hereby waives all rights to trial by jury in any action, proceeding, claim or counterclaim arising out of this Mortgage.

16. <u>Waivers by Mortgagor</u>.

(a) To the extent permitted by law, Mortgagor shall not apply for or avail itself of any appraisement, valuation, redemption, reinstatement, stay, extension or exemption laws or any so-called "Moratorium Laws" now existing or hereafter enacted, in order to prevent or hinder the enforcement of foreclosure of this Mortgage and hereby waives the benefit of such laws. Mortgagor, for itself and all who may claim through or under it, waives any and all right to have the property and estates comprising the Premises marshaled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Premises sold as an entirety. To the extent permitted by law, Mortgagor hereby expressly waives any and all rights of redemption and reinstatement, on its own behalf and on behalf of each and every person having a beneficial interest in Mortgagor, it being the intent hereof that any and all such rights of redemption or reinstatement of Mortgagor and of all other persons are and shall be deemed to be hereby waived. Mortgagor acknowledges that the Premises do not constitute agricultural real estate.

(b) In any action commenced by Mortgagee by reason of Mortgagor's default under the terms of this Mortgage or the Note or bond secured hereby, whether such action be an action to foreclose or an action under the bond or Note, Mortgagor hereby waives any defense other than payment, and waives any right to set-off by way of damages, recoupment or counterclaim in damages (unless a mandatory counterclaim), whether arising out of this Mortgage or the bond or Note or otherwise, which Mortgagor may otherwise be entitled to. Mortgagor shall have an independent action for such claim and such independent action shall not at any time be joined or consolidated with any action commenced by Mortgagee under this Mortgage or the bond or Note secured hereby, unless a mandatory counterclaim.

17. <u>Application of Funds</u>. Mortgagee will have the right, at Mortgagee's sole discretion, to direct the manner in which payments or proceeds will be applied for allocation among the various items composing Mortgagor's indebtedness and the obligations secured by this Mortgage.

18. <u>Limitation on Amount Secured</u>. Notwithstanding anything to the contrary set forth in this Section 4 or elsewhere in this Mortgage, the maximum amount principal indebtedness secured by this Mortgage or which, under any contingency, may become secured hereby at any time hereafter is the Loan Amount, together with interest thereon as set forth in the Note, all amounts expended by Mortgagee to maintain the lien of this Mortgage or protect any of the Premises, including without limitation, all amounts in respect of insurance premiums and real estate taxes, charges and assessment, litigation expenses to prosecute or defend the rights, remedies and lien of this Mortgage or title to the Mortgaged Property, and any costs, charges or amounts to which Mortgagee may become subrogated upon payment, whether under principles or law or equity or under express statutory authority.

19. <u>Lien Law</u>. Mortgagor will, in compliance with Section 13 of the New York Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust

fund to be applied first for the purpose of paying the cost of the Improvements and will apply the same first to the payment of the cost of the Improvements before using any part of the total of the same for any other purpose.

20. <u>General Provisions</u>.

(a) The covenants contained in this Mortgage shall run with the land and shall apply to, inure to the benefit of and bind Mortgagor, the heirs, personal representatives, legatees, devisees, administrators, executors, successors and permitted assigns of Mortgagor, and all subsequent owners, encumbrancers, tenants and subtenants of the Premises, and shall inure to the benefit of Mortgagee, the personal representatives, successors and assigns of Mortgagee and all subsequent holders of this mortgage. This provision does not qualify any restrictions in this Mortgage regarding the right to transfer.

(b) Notwithstanding any rule of law or custom to the contrary, no provision of this Mortgage or of the Note shall be construed or interpreted against the Mortgagee or the then holder of the Note and this Mortgage by reason of the Mortgagee's having drafted this Mortgage and the Note or having caused this Mortgage and the Note to be drafted.

(c) Wherever used in this Mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the word "lease" shall mean "tenancy, subtenancy, lease or sublease", the word "Mortgagor" shall mean "Mortgagor and any subsequent owner or owners of the Premises", the word "Mortgagee" shall mean "Mortgagee or any subsequent holder or holders of this Mortgage", the word "person" shall mean "an individual, corporation, partnership, limited liability company or unincorporated association", the word "Premises" shall include the real estate hereinabove described, together with all Equipment, condemnation awards and other rights or property interest at any time made subject to the lien of this Mortgage by the terms hereof, and the word "Equipment" shall include all personal property, chattels and fixtures that are at any time made subject to the lien of this Mortgage.

(d) If any words or phrases in this Mortgage shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Mortgage shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Mortgage and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated.

(e) Whenever the context so requires, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

(f) Examples contained in the various Sections of this Mortgage are non-inclusive in nature.

(g) Captions and section headings used in this Mortgage are for convenience only and are not part of this agreement and will not be used in construing it.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

Case 1:23-42559-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

IN WITNESS WHEREOF, the undersigned has executed the foregoing Mortgage and Security Agreement as of the date first above written.

**DONGAN PLAZA INC**
a New York corporation

By: _____
Name: Tu Kang Yang
Title:   Authorized Signatory

STATE OF NEW YORK      )
                                       : ss:
COUNTY OF NEW YORK  )

On the 17th day of May in the year 2018, before me, the undersigned, personally appeared Tu Kang Yang, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

BRADLEY R. WEISS
Notary Public, State of New York
No. 01WE5017524
Qualified in Suffolk County
Commission Expires Sept. 7, 2016  2021

## SCHEDULE A
## LEGAL DESCRIPTION

Case 1:23-42552-nhl   Doc 6-2   Filed 08/15/23   Entered 08/15/23 13:05:23

## Schedule A Description

Title Number: **PLA-180304Q**                    Policy Number: **LX-12292654**

ALL that certain plot, piece or parcel of land, situate, lying and being in Newtown, Borough and County of Queens, City and State of New York, known and designated on a certain map entitled, "Map of Elmhurst Square, situate at Elmhurst, Second Ward, Borough of Queens, City of New York, surveyed by Leonard C.L. Smith", and filed in the office of the Clerk of the County of Queens, November 11, 1905, as and by lots 52 to 56, both inclusive, in Block C and being more particularly bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Queens Boulevard with the easterly side of Dongan Avenue;

RUNNING THENCE northerly along the easterly side of Dongan Avenue, 142.46 feet (deed; 142.27 feet tax map);

THENCE easterly right angles to Dongan Avenue, 100 feet;

THENCE southerly parallel with Dongan Avenue, 85.78 feet (deed; 85.58 feet tax map) to the northerly side of Queens Boulevard;

THENCE southwesterly along the northerly side of Queens Boulevard, 114.95 feet to the point or place of BEGINNING

**Exhibit C**

Case 1-23-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

# NOTE

$2,500,000.00                                                      Effective as of June 5, 2018

FOR VALUE RECEIVED, DONGAN PLAZA INC (the "**Borrower**"), a New York corporation, having a registered office and an address for purposes of notices and legal process at 102-55 67th Drive, Apt. 3C, Forest Hills, New York 11375, promises to pay to the order of MIOF CREDIT 1 LLC, a Delaware limited liability company, having an address at 660 Madison Avenue, Suite 1700, New York, New York 10065 (the "**Lender**"), or at such other place as may be designated in writing by the holder of this Note, the principal sum of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) in lawful money of the United States of America, together with interest thereon to be computed from the date hereof and to be paid in accordance with the terms of this Note.

## 1. BORROWER'S PROMISE TO PAY

In return for a loan made by Lender to Borrower secured by that certain Mortgage (as hereinafter defined), Borrower promises to pay U.S. $2,500,000.00 (hereinafter, the "**Principal**"), plus interest and other sums due, to the order of Lender, in accordance with the terms of this Note. Borrower will make all payments under this Note in the form of check or federal funds transfer to an account designated by Lender or in such other manner as may be designated by Lender. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is hereinafter called the "**Note Holder**".

## 2. INTEREST

Absent an Event of Default (as hereinafter defined), interest under this Note shall be due and payable at the "Applicable Interest Rate" (as hereinafter defined) for the period from the date hereof through the Maturity Date, as the same may be extended, or through the earlier prepayment of the Loan in full. The term "**Applicable Interest Rate**," as used herein, shall mean an interest rate equal to twelve percent (12%) per annum. Interest for any month or fractional part thereof shall be calculated on the basis of a 360-day year for the actual number of days elapsed, and shall be due and payable hereunder monthly.

## 3. PAYMENT TERMS

3.1.     Borrower agrees to pay sums under this Note in installments as follows:

3.1.(a) On the date hereof in the sum of Twenty-One Thousand Six Hundred Sixty-Six and 58/100 Dollars ($21,666.58), representing interest only from the date of this Note through June 30, 2018.

3.1.(b) Commencing on August 1, 2018 and on the first day of each month thereafter through and until May 17, 2020 (the "**Maturity Date**"), Borrower shall pay to Lender monthly installments of interest only due in accordance with the terms of this Note;

3.1.(c) All accrued and unpaid interest and the unpaid principal balance hereof are due and payable on the earlier to occur of (i) the Maturity Date, or (ii) the date on which the Indebtedness becomes immediately due and payable hereunder.

## 4. MORTGAGE

This Note is a secured by (a) a second mortgage lien in the principal sum of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) evidenced by a Mortgage and Security Agreement of even date herewith given by Borrower to Lender encumbering certain premises located in the County of Queens and State of New York, commonly known by the address 81-05 Queens Boulevard, Flushing, New York 11373 (hereinafter referred to as the **"Mortgage"**), and (b) certain other instruments and agreements dated of even date herewith or executed pursuant to this transaction from time to time by Borrower, principal, surety, guarantor, member, endorser or any other parties for the benefit of Lender (said documents and agreements and all other documents and agreements evidencing or securing the Indebtedness are hereinafter referred to, collectively as the **"Loan Documents"**). All of the terms, covenants, conditions and agreements contained in the Mortgage are hereby incorporated herein and made a part hereof.

## 5. APPLICATION OF PAYMENTS

5.1.    Each payment made by Borrower, at the discretion of Lender, shall be applied as follows:

5.1.(a) First, to any costs of collection hereunder;

5.1.(b) Then, to any unpaid costs or balances of advances (excluding the original advance of the Principal) made by Lender in connection with the Mortgage and/or any of the Loan Documents and/or this Note and to any other amounts which may be overdue on account of any of the several terms, provisions, conditions or covenants contained in this Note, the Mortgage and the Loan Documents;

5.1.(c) Then, to late charges and any other fees or charges due hereunder if any;

5.1.(d) Then, to interest then due and payable hereunder (at the Default Rate, if applicable);

5.1.(e) And the remainder to the Principal balance hereof.

5.2.    Monthly installments of interest shall be paid when due, regardless of the prior acceptance by Lender of payments in excess of the regular monthly installment of interest.

5.3.    The designation or allocation by Borrower of the disposition or allocation of any payments made will not be binding upon Lender which may allocate any and all such payments to interest, principal and other fees and charges due hereunder or to any one or more of them, in such amount, priorities and proportions as Lender may determine in its sole discretion in accordance with the terms hereof.

Case 1-23-42557-nhl    Doc 6-2    Filed 08/11/23    Entered 08/15/23 13:05:23

## 6. DEFAULT AND ACCELERATION

6.1.    It is hereby expressly agreed that (A) the whole of the principal sum of this Note, (B) interest, default interest, late charges, fees and other sums, as provided in this Note, (C) all other monies agreed or provided to be paid by Borrower in this Note, the Mortgage or the Loan Documents, (D) all sums advanced pursuant to the Mortgage and/or the Loan Documents, and (E) all sums advanced and costs and expenses incurred by Lender in connection with the Indebtedness or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or any part thereof, or the acquisition or perfection of the security granted pursuant to the Mortgage and the other Loan Documents, whether made or incurred at the request of Borrower or Lender (the sums referred to in (A) through (E) above shall collectively be referred to as the "**Indebtedness**") shall, **WITHOUT NOTICE** (unless otherwise provided herein), become immediately due and payable at the option of the Note Holder upon the happening of any of the following events (each, an "**Event of Default**"):

6.1.(a) Borrower fails to pay any amount due to Lender under this Note when due.

6.1.(b) Borrower fails to keep, observe or perform any other promise, condition or agreement contained in this Note, the Mortgage, the Loan Documents or any other documents described herein or delivered in connection herewith or is otherwise in default under the terms, covenants and conditions of this Note, the Mortgage and the Loan Documents, and such failure or default is not remedied within fifteen (15) days after notice to Borrower thereof, provided, however, that if such failure or default is not capable of being cured or remedied within said fifteen (15) day period, then if Borrower fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion but in any event within thirty (30) days after notice thereof;

6.1.(c) There is a material misstatement in any certificate and/or certification delivered in connection with this Note, the Mortgage, and other Loan Documents, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of Borrower in connection with this Note shall be materially misleading, untrue or incorrect;

6.1.(d) A receiver, liquidator or trustee shall be appointed for Borrower or for any of its property, an assignment shall be made for the benefit of creditors, Borrower or a member of Borrower shall be adjudicated as bankrupt or insolvent, or any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy Reform Act of 1978 codified as 11 U.S.C. §101 et seq., and the regulations issued thereunder, both as hereafter modified from time to time (the "**Federal Bankruptcy Code**"), or any similar federal or state statute, shall be filed by or against Borrower, unless such appointment, assignment, adjudication or petition was involuntary, in which event only if the same is not discharged, stayed or dismissed within thirty (30) days;

6.1.(e) A final non-appealable judgment (or, if the judgment was not appealed, a final judgment for which the time to appeal has expired) for the payment of money shall be rendered against Borrower or a member of Borrower which would materially adversely

affect Borrower's ability to make payments under this Note and Borrower or such member shall not discharge the same or cause it to be discharged within thirty (30) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered within the applicable appeal period, or shall not thereafter secure a stay of execution pending such appeal;

6.1.(f) Borrower or a member of Borrower shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with the intent to hinder, delay or defraud Lender of any of its property and/or assets which may be fraudulent under any federal or state bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if Borrower shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if Borrower shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within thirty (30) days from the date of entry thereof;

6.1.(g) Borrower or a member of Borrower defaults under any other note, instrument, agreement, contract, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Borrower, and such event or occurrence is not remedied or cured within ten (10) days after notice thereof or an "event of default" (as defined in such other note, instrument, agreement, contract, pledge, mortgage or encumbrance) shall have occurred; or

6.1.(h) If, without the written consent of Lender, the interest of any member of Borrower is assigned or transferred, or the manager withdraws, resigns or is replaced, unless due to the death or disability of the manager.

6.1.(i) Any of the events enumerated in this Section with respect to any Guarantor or any of its property shall have occurred;

6.2.   After the occurrence of an Event of Default, Lender may accept any payments from Borrower without prejudice to the rights and remedies of Lender provided herein or in the Mortgage or the Loan Documents.

## 7.  DEFAULT INTEREST/LATE CHARGES

7.1.   From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by the Note Holder, interest shall accrue on the outstanding Indebtedness, and shall be payable, at a rate equal to twenty-four percent (24%) per annum (the **"Default Rate"**). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidenced by this Note. The Default Rate shall be in effect at all times after the maturity of the Indebtedness (whether on the Maturity Date, by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Indebtedness, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

Case 1:23-42557-phl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

7.2.    Except for any payment of the Indebtedness after acceleration, if any payment (or part thereof) provided for herein shall not be made when due, a late charge of six cents ($0.06) for each dollar so overdue shall become immediately due and payable to the Note Holder as liquidated damages for failure to make prompt payment and the same shall be secured by the Mortgage. This fee is not a penalty but a fee reasonably calculated to reimburse the Note Holder for administrative and staff time. Such charge shall be payable in any event no later than the due date of the next subsequent installment or, at the option of Note Holder, may be deducted from any deposits held by Lender as additional security for this Note. Nothing herein is intended to or shall extend the due dates set forth for payments under this Note. Such late fee may be charged on any subsequent delinquent payment.

7.3.    Should the Indebtedness or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection, Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable hereunder, all costs of collecting or attempting to collect the Indebtedness, including attorneys' fees and expenses and court costs, regardless of whether any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate from the date paid or incurred by Note Holder until such expenses are paid by Note Holder.

7.4.    Notwithstanding anything to the contrary herein set forth, in no event shall any interest payable under this Note exceed the maximum interest rate permitted under law or the rate that could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate that Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the interest rate hereinabove set forth, other charges, or the Default Rate, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Indebtedness, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of this Note until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Indebtedness for so long as the Indebtedness is outstanding. Borrower agrees to an effective rate of interest that is the rate stated herein plus any additional rate of interest resulting from any other charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit received or to be received by Note Holder, in connection with this Note.

## 8. WAIVERS

8.1.    Borrower and all parties who may become eligible for the payment of all or any part of the Indebtedness, whether principal, surety, guarantor, pledgor, or endorser, hereby waive demand, notice of demand, presentment for payment, notice of intent to accelerate maturity,

notice of acceleration of maturity, notice of dishonor, protest, notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note.

8.2. The liability of Borrower, any guarantor, pledgor or endorser shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Note Holder, including, but not limited to any extension of time, renewal, waiver or other modification. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Mortgage and other Loan Documents, or any other guaranty or instrument made by agreement of Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower and any other person or entity who may become liable for the payment of all or any part of the Indebtedness under this Note.

8.3. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Note Holder to take further action without further notice or demand on Borrower as provided for in this Note. Any failure of the Note Holder to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time and from time to time thereafter. Lender or any Note Holder may accept late payment, or partial payment, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Note Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**8.4. BORROWER AND EACH ENDORSER AGREE THAT ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE MAY BE INITIATED AND PROSECUTED IN THE STATE OR FEDERAL COURTS, AS THE CASE MAY BE, LOCATED IN THE COUNTY OF QUEENS, STATE OF NEW YORK. BORROWER AND EACH ENDORSER CONSENT TO AND SUBMIT TO THE JURISDICTION OF SUCH COURTS OVER THE SUBJECT MATTER, WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENT THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED OR CERTIFIED MAIL OR REPUTABLE OVERNIGHT DELIVERY SERVICE DIRECTED TO BORROWER OR SUCH ENDORSER AT ITS ADDRESS SET FORTH ABOVE OR TO ANY OTHER ADDRESS AS MAY APPEAR IN LENDER'S RECORDS AS THE ADDRESS OF BORROWER OR SUCH ENDORSER.**

**8.5. IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, BORROWER AND EACH ENDORSER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY ACTS OR OMISSIONS OF NOTE HOLDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS**

**WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND EACH ENDORSER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.**

8.6.    **BORROWER AND EACH ENDORSER ALSO WAIVE (I) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION, (II) ANY OBJECTION BASED ON FORUM NON CONVENIENS OR VENUE, AND (III) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.**

9. **PREPAYMENT**

Borrower has the right to prepay the Indebtedness in whole or in part at any time before it is due. Such prepayment of Indebtedness is known as a **"Prepayment."** When Borrower tenders a Prepayment, Borrower will tell Note Holder that it is doing so. Borrower may not make a Prepayment at any time that Borrower has not made all current monthly payments then due under the term of this Note.

Borrower may make a Prepayment without paying a Prepayment charge. The Note Holder will apply the Prepayment to the outstanding Principal under this Note. However, Note Holder may first apply a Prepayment as provided in Section 5 hereof.

10. **NOTICES**

All notices to be given pursuant to this Note shall be in writing and sufficient if given by personal in-hand service, by reputable overnight delivery service, or by being mailed postage prepaid, by registered or certified mail, to such party's address first herein above set forth, along with a copy to such party's attorneys, as follows: (a) Lender's attorney: Mavrides, Moyal, Packman & Sadkin, LLP, 276 Fifth Avenue, Suite 404, New York, New York 10001, Attention: Eric Sadkin, Esq., and (b) Borrower's attorney: Yu Law P.C., 199-20 32nd Avenue, Ground Floor, Flushing, New York 11358, Attention: Wing Y. Yu, Esq. Notices by registered or certified mail shall be considered delivered and become effective upon the earlier of receipt or three (3) days after mailing thereof. Notices by personal hand delivery shall be considered delivered and become effective on the day delivered or refused. Notices by overnight delivery service shall be considered delivered and become effective on the next business day after being sent. Notices may be given by a party's attorneys or agents with the same force and effect as though given by such party.

11. **MISCELLANEOUS**

11.1.    **Time shall be of the essence with respect to all provisions of this Note.**

11.2.    Borrower represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligations of Borrower.

11.3.    Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, without limitation, legal fees and disbursements of Note Holder, whether with respect to retained firms, the reimbursement of the expenses of in-house staff, counsel, or otherwise. Borrower shall pay to Note Holder on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in enforcing this Note.

11.4.    This Note cannot be changed, modified, amended, waived, extended, discharged or terminated orally or by estoppel or waiver, regardless of any claimed partial performance referable thereto, or by any alleged oral modification or by any act or failure to act on the part of Borrower or Note Holder.

11.5.    The agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising Borrower, and the term "Borrower," as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners or members, as the case may be, shall not thereby be released from any liability. Nothing in the foregoing shall be construed as consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in this Note, the Mortgage or the Loan Documents.

11.6.    Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provision hereof.

11.7.    If any paragraph, clause or provision of this Note is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such voidness, invalidity or unenforceability will not affect the remaining paragraphs, clauses and provisions of this Note, which shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

11.8.    If more than one person is named in this Note as "Borrower," each obligation of Borrower shall be the "joint and several" obligation of such party or entity.

11.9.    The terms and provision of this Note shall be binding upon and inure to the benefit of Borrower and Note Holder and their respective heirs, executors, legal representatives, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law. As used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, executors, legal representative, successors, successors-in-title, and assigns, whether by voluntary action of the parties or by operation of law.

11.10. All the terms and words used in this Note, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Note or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

11.11. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

Case 1-23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

11.12. This Note shall be governed by and construed in accordance with the laws of the State of New York.


[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the undersigned has executed the foregoing Note as of the date first above written.

DONGAN PLAZA INC
a New York corporation

By: _____

Name: Tu Kang Yang
Title: Authorized Signatory

STATE OF NEW YORK )
                   : ss:
COUNTY OF NEW YORK )

On the 5th day of June in the year 2018, before me, the undersigned, personally appeared Tu Kang Yang, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

BRADLEY P. WEISS
Notary Public, State of New York
No. 01WE5017524
Qualified in Suffolk County
Commission Expires Sept. 7, 2015 2021

Case 1-23-42552-nhl Doc 6-2 Filed 08/15/23 Entered 08/15/23 13:05:23

# ALLONGE

Dated: February 24, 2022

Allonge to a certain Note dated as of June 5, 2018 in the principal amount of $2,500,000.00 executed by Dongan Plaza Inc and payable to the order of MIOF Credit 1 LLC (the "**Note**").

Without representation, recourse or warranty, express or implied, pay to the order of:

QUEENS 8105 LENDER LLC
585 Stewart Avenue, #770
Garden City, New York 11530

This Allonge shall be attached to the original Note described above and is hereby made a part thereof.

(SIGNATURES APPEAR ON THE FOLLOWING PAGE)

Dated: February 24, 2022

**MIOF CREDIT 1 LLC**
a Delaware limited liability company

By: _____
Name: Joshua Knoll
Title:   Authorized Signatory

**Exhibit D**

FILED: QUEENS COUNTY CLERK 12/13/2022 10:03 PM
Case 1-23-42552-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23    INDEX NO. 720909/2021

NYSCEF DOC. NO. 298                                          RECEIVED NYSCEF: 12/13/2022

# MORTGAGE AND SECURITY AGREEMENT

between

**DONGAN PLAZA INC**
a New York corporation
102-55 67th Drive, Apt. 3C
Forest Hills, New York 11375

to

**MIOF CREDIT 1 LLC**
a Delaware limited liability company
660 Madison Avenue, Suite 1700
New York, New York 10065

Dated: as of June 5, 2018

ADDRESS OF MORTGAGED PROPERTY:

81-05 Queens Boulevard
Flushing, New York 11373

Block: 1540; Lot: 7
County: Queens

Return to & Prepared by:
Mavrides, Moyal, Packman & Sadkin, LLP
276 Fifth Avenue, Suite 404
New York, New York 10001
Attention: Eric Sadkin, Esq.

Case 1-23-42557-nhl    Doc 6-2    Filed 08/15/23    Entered 08/15/23 13:05:23

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (this "**Mortgage**") made effective as of the 5th day of June, 2018.

BETWEEN

DONGAN PLAZA INC, a New York corporation having an office and an address for purposes of notices and legal process at 102-55 67th Drive, Apt. 3C, Forest Hills, New York 11375 (the "**Mortgagor**"),

as Mortgagor,

and

MIOF CREDIT 1 LLC, a Delaware limited liability company having an address at 660 Madison Avenue, Suite 1700, New York, New York 10065 (the "**Mortgagee**"),

as Mortgagee,

WITNESSETH, that to secure the (a) payment of that certain Indebtedness, in the original principal amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (the "**Loan Amount**"), lawful money of the United States, as evidenced by that Note of even date herewith made by Mortgagor for the benefit of Mortgagee (the "**Note**"), together with all interest payable under the Note, (b) the payment of all amounts, sums and expenses due under the Note, this Mortgage and any other Loan Document (as hereinafter defined) and (c) the payment and performance of such other obligations as are set forth in this Mortgage, Mortgagor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Mortgagee, and grants a security interest to Mortgagee in, the following property, rights, interests and estates now owned or hereafter acquired by Mortgagor (collectively, the "**Premises**"):

ALL that certain plot, piece or parcel of land located in the County of Queens and State of New York commonly known by the address 81-05 Queens Boulevard, Flushing, New York 11373, as more particularly described in SCHEDULE A annexed hereto and hereby made a part hereof (the "**Land**").

TOGETHER with all additional lands, estates and development rights hereafter acquired by Mortgagor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Mortgage;

TOGETHER with any after acquired interest the Mortgagor may acquire by reason of the withdrawal and/or abandonment of the Part 20 offering plan submitted for filing with the New York Attorney General on August 19, 2016 (Plan ID CD 160056) for the Dongan Tower Condominium.